TOWER UNDERWRITERS, INC. *v.* LOTT.

Division A. Jan. 2, 1951.

No. 37754 (49 So. (2d) 704)

James Simrall, Jr., and L. Barrett Jones, for appellant.

Cowles Horton and Stone & Stone, for appellee.

McGehee, C. J.

This suit is for the recovery of $1,546 representing the total amount of principal, interest and other charges paid by the appellee, T. A. Lott, on four loans of money made to him by the Louisiana Loan Discount Corporation of Bogalusa, Louisiana, allegedly through its agent, the

appellant, the Tower Underwriters, Inc., at Greenwood, Mississippi. The suit was begun in the circuit court against both corporations but was transferred to the chancery court where a decree was rendered for the amount sued for against the appellant, Tower Underwriters, Inc. Process was had on appellant and also a summons had been issued for the nonresident defendant which was attempted to be served by delivering a copy thereof to the appellant on the theory that it was making the loans in this State as agent of its said nonresident codefendant.

The trial court held that it had no jurisdiction of the nonresident defendant by virtue of the attempted service of process, and the cause proceeded to trial against the appellant, Tower . Underwriters, Inc., after being dismissed as to the nonresident defendant because of lack of jurisdiction for want of process.

Section 36, Code of 1942, provides, among other things that: ''If a rate of interest is contracted for or received, directly or indirectly, greater than twenty per centum per annum, the principal and all interest shall be forfeited, and any amount paid on such contract may be recovered by suit.''

The facts are that on July 3, 1945, the borrower, T. A. Lott, went to the office of the Tower Underwriters, Inc., at Greenwood, Mississippi, and applied for a loan of $300 on an automobile. He was thereupon given a draft drawn by said corporation on the nonresident corporation for the sum of $300, and a second draft similarly drawn in his favor for $53.78, which he then and there endorsed and delivered to the appellant resident corporation, (1) after having executed then and there an installment note of $387 payable to the order of the nonresident corporation or bearer in twelve installments, one due on the first day of each month, bearing eight per cent interest from maturity until paid, but which note appeared on its face to have been executed at Bogalusa, Louisiana,

and (2) after having executed a "Receipt for Loan" dated at Greenwood, Mississippi, and reading as follows:

"300 No. G 54 Greenwood Miss. 7/3/ 1945 Received of my agent and broker, Tower Underwriters, Inc., trading as Tower Loan Brokers, the sum of $387.00 less discount and reserve of $33.22 paid on my behalf to the lender and less fee of $53.78 paid my agent above named for insurance and services rendered.

" T. A. Lott ".

and (3) after having executed an indemnifying chattel deed of trust on the automobile in favor of the appellant resident corporation, which recited that "Whereas, Tower Underwriters, Inc. acting for and as the agent for the undersigned, has, by virtue of its unconditional endorsement and guarantee of note hereinafter described, secured from others a loan for the undersigned in the sum of $387 as evidenced by note of said amount, executed by the undersigned in favor of the lender . . .", the same was given to save it harmless, etc.

The installment note above referred to contains a recital that the note "is given and is being negotiated and closed, and payable in Bogalusa, Louisiana; . . . it is agreed that rights of the note holders shall be admeasured by the laws of the State of Louisiana, which are hereby expressly adopted to control this entire transaction."

The draft given to the borrower for $300 was cashed by him at a local bank within less than thirty minutes from the time he applied for the loan, and he then went on his way. In other words, the papers were not submitted to the nonresident corporation for approval between the time of their execution and the borrower's receipt of the money. He thereafter paid the monthly installments, or otherwise paid off the loan, to the resident defendant at Greenwood. The borrower testified that he read the papers before signing the same and understood that he was agreeing to pay the sum of $387 in return for the $300 that he had received. He further

testified, however, that he did not request the resident defendant to find someone to make him a loan or employ it to serve as his agent for that purpose, but that he merely walked into the office, applied for the loan and received the said draft which he was able to cash as soon as he could go to the local bank.

The two drafts hereinbefore mentioned were honored by the Louisiana Loan Discount Corporation when presented in due course at its bank in Bogalusa, the drawee receiving in return therefor the installment note of the borrower for $387, duly endorsed by the appellant, Tower Underwriters, Inc.

It is to be inferred from the testimony of the borrower that the indemnifying deed of trust which he executed on the automobile in favor of the appellant, Tower Underwriters, Inc., was also sent to Bogalusa, Louisiana, together with a fire, theft and collision insurance policy on his automobile, since he testified that after he paid his note in full he inquired about the deed of trust and the insurance policy and was informed by the appellant that the same were at Bogalusa, Louisiana.

On July 3, 1946, and November 19, 1946, respectively, two additional loans were obtained at the office of the said resident corporation in the sum of $300 each, and for which the notes were executed in the sum of $392 each, all in the same form and manner and security as the first loan, the borrower receiving in each instance one draft for $300, and another for $68.48, the latter of which he endorsed over to the resident corporation, and he executed a similar ''Receipt for Loan'' as that hereinbefore quoted, in each instance; and on April 7, 1947, a fourth loan was obtained for $273 for which he executed a similar note for $375, and the receipt for which loan in the form hereinbefore quoted showed that the resident corporation received $79.50 for insurance and services. An indemnifying deed of trust and insurance policy were executed in each of these three instances as in the case of the first loan.

The borrower testified that he repaid the last mentioned loan in two months after he borrowed the money, and that he repaid the first three loans within about six months after he borrowed the money.

The net result was that the nonresident corporation allegedly received as interest $33.22 on the first loan, $23.52 on each of the second and third loans, and $22.50 on the last loan, and that the appellant, resident defendant, allegedly received as brokerage fees $53.78 on the first loan, $68.48 on each of the second and third loans, and $79.50 on the fourth loan, and paid therefrom insurance on the automobile in the total sum of $115.44 during the life of the four loans, leaving a net balance of brokerage fee of $154.80. Had each of the loans run for a full year instead of being paid off in monthly installments, or within less than six months from the date of the notes respectively, the Louisiana Loan Discount Corporation would have been entitled to collect only $93.84 at the rate of eight per cent per annum, whereas it collected the sum of $102.76 as interest. This amount plus the alleged brokerage fees collected by the resident corporation amounted to more than twenty per centum per annum interest on the loans, if all of the same was in fact interest, after deducting the insurance premiums paid by the resident corporation of $115.44.

Therefore, the question presented is whether or not the $102.76 received by the nonresident corporation and the total of $270.24 received by the resident corporation as "agent and broker", less the $115.44 paid therefrom for insurance, may all be regarded as interest for the hire of the money loaned to the borrower. If the alleged brokerage fees were lawful charges, then the borrower would not have been entitled to a decree for the recovery of all of the principal and other amounts paid even as against the Louisiana Loan Discount Corporation if the court had acquired jurisdiction by service of process on said nonresident corporation. The provision of Section 36, Code of 1942, hereinbefore quoted, is highly

penal and must therefore be strictly construed. Hence no recovery for the full amount repaid on the loans, together with the interest and other charges, can be had against the resident defendant, Tower Underwriters, Inc., unless we could hold on the record before us that said defendant was in reality the lender of the money, or received the payments as payee, assignee or transferee of the loans. To so hold, it would be necessary that we disregard the acknowledgment in writing of the borrower, knowingly made, that he received the money from the resident corporation as his agent and broker, he having admitted on the witness stand that he read the papers that he signed wherein he acknowledged that he was paying the amount received by the resident defendant for insurance and services rendered to him as his agent and broker. If he read the note that he signed and the draft that he cashed, then he saw that he was getting the money on a draft that was to be paid by the non-resident corporation, and he saw that he was agreeing in his promissory note to repay the same to the nonresident corporation. And if he read the receipts that he signed for the loans, he saw that the nonresident corporation, as lender, was to receive only a portion of the amount that he was agreeing to pay over and above the net proceeds of the loan, and that the remainder was to be received by his "agent and broker" for "insurance and services rendered", included among which services was its endorsement of the note which he indemnified by his deed of trust.

This brings us to the applicable law to be applied under the foregoing state of facts. The willingness of necessitous borrowers to pay whatever may be demanded in order to obtain temporary relief from financial embarrassment, and the ingenuity of lenders in taking advantage of this need has resulted in a great many devices to evade the usury laws. The trial court undertook to frustrate what it deemed to be an attempted evasion of such laws in the instant case by looking

beyond the form of the transactions to their substance. Because of the exorbitant charges in connection with the four loans involved in this case, we are sympathetic with the view thus entertained by the chancellor; ▌▌ but the question at issue is whether or not the resident corporation, against whom the decree of $1,546 was rendered, may lawfully charge and collect a brokerage or service fee from the borrower for placing a loan for him with a nonresident corporation and for guaranteeing the payment of such loan. It seems that this Court has repeatedly upheld the affirmative of this proposition, if we are to assume that the amounts received by the resident defendant for its own use and benefit were brokerage or service fees and not interest.

The president of the appellant, Tower Underwriters, Inc., testified that the same is a Mississippi corporation, having approximately 125 stockholders over the State and maintains about seventeen loan brokers offices in Mississippi where it renders assistance as a loan agent and broker of the borrowers of small loans, acts as their agent in transmitting payments to the nonresident lender, and guarantees in full the payments of the borrowers' accounts to the lender by endorsement and placing with the lender sufficient reserve to guarantee that its promise will be taken care of.

The witness further testified, and it is undisputed, that no stockholders of the Louisiana Loan Discount Corporation own any stock in the appellant Tower Underwriters, Inc., and that neither do any of the stockholders in the latter own any of the stock in the former; that they have no officers or directors in common but are entirely separate and distinct corporate entities; that the resident corporation is not authorized by its charter to make loans but acts only as an agent or broker in that behalf; and that while the bulk of its business is done with this nonresident corporation, it receives no part of the principal or interest when the loan is paid, but merely remits the same to the nonresident lender

and receives no compensation, either directly or indirectly, from the lender.

The witness was asked: "Is the Tower Underwriters, Inc. able to make these loans itself?" A. "It is not. It would take approximately one and a half million dollars a year and we don't have it." ▮▮▮ Thus, it will be seen that the nonresident corporation has been able to work out a scheme whereby it may place loans to this enormous amount in this State and collect these exorbitant charges on the money advanced as fees by it to the agent and broker of the borrower, and to sucessfully claim that it is not doing business in this State or violating our usury laws, since it has no office, place of business or agents and employees in this State, has not qualified to do business under our laws, and admittedly receives no part of the fees collected by the agent and broker of the borrower. But, the problem thus presented is one for the Legislature, and is not for the courts in the absence of clear, positive and certain proof that more interest is received as such than is allowed by Section 36, Code of 1942. We held in the case of Yeager et al. v. Ainsworth et al., 202 Miss. 747, 32 So. (2d) 548, that such a degree of proof is required.

In the case of New England Mortgage Security Company et al. v. Townes, Miss., 1 So. 242, 244, in an opinion written by Mr. Justice Cooper, it was held that one Adams and his associate agents and brokers could lawfully charge the borrower $400 as a brokerage fee out of the proceeds of a $2,000 loan without the loan being tainted with usury. The Court recognized that "The evidence discloses a most exorbitant charge made by those through whom the loan was secured for the appellee; but these parties seem to have been regularly engaged in an independent business of their own, in which the appellant (the lender) had no sort of interest, and with which they had no connection." The Court also stated that: "It is true that courts of equity will look through the form to the substance of a transaction,

and declare that to be usury which is usury, no matter what device is resorted to to cover the real nature of the dealing between the parties; but it cannot, on mere suspicion, establish the relationship of principal and agent, nor visit upon the innocent the consequences of the illegal act of another, for whom he was not at all responsible.'' However, that case may be distinguished from the case at bar by the fact that the lender did not know of the exorbitant charges, whereas in the instant case the nonresident corporation knew of the exorbitant charge when it honored the alleged broker's draft therefor.

Nevertheless, this Court later held in the case of Pass v. New England Mortgage Security Company, 66 Miss. 365, 6 So. 239, 240, that knowledge on the part of the lender of the exorbitant charges of the intermediary was immaterial if the lender received no part thereof, as is true in the case at bar, and did not receive a greater rate of interest for the use of its money than the law allows, the Court speaking through Mr. Justice Campbell, saying: ''It matters not, if intermediaries, through whom the borrower effected the loan, charged for their services a sum which, added to the interest stipulated, made the cost of the use of the money to exceed the legal rate of interest. If the borrower has to pay others than the lender for the means of obtaining the loan, that is not usury, for it is not the price of the use of money, but the cost of getting it at all. If I agree to pay a man $1,000.00 to secure for me from another a loan of $5,000.00 at a legal rate of interest, and he obtains it by his credit or influence or labor, it matters not by what means, I cannot maintain the defence of usury against the evidence of debt executed by me to the person who was induced to part with $6,000.00 as a loan to me, if that person neither stipulates for nor receives for his loan more than the legal rate of interest. Nor does it make any difference that he has full knowledge that the cost to me of securing the loan is so great as that supposed.

I may be willing to lend money on the guaranty of an individual. If one desiring to borrow pays that individual even an exorbitant price for his guaranty, and thereby gets my money at a rate of interest to be received by me within the bounds of the statute, there is no usury. I may be willing to lend money on the faith of the representation of another that he thinks the transaction a safe one, and, if he charges a borrower for the service rendered him in recommending to me the loan, that is their matter, and in no manner affects my loan, if I am not to get more than the law allows for the use of the money. The application of these principles to the facts of this case presents the loan as without any semblance of usury.''

In the case of Allen v. Grenada Bank et al., 160 Miss. 419,. 133 So. 648, the Court held that even though the bonus was received by the lender's agent instead of the agent and broker of the borrower, it does not constitute usury where the one receiving the bonus rendered valuable services to the substantial advantage of the borrower ''outside of and beyond the making of the loan, and outside of any obligation justly incumbent on the lender in the preparation or consummation thereof''. In the instant case, we are unable to say that a guarantee by the broker of the repayment of the loan was not outside of and beyond the course usually followed in the making of a loan. In the case, supra, the Court said that: ''. . . there is no usury if the lender receives, and is to receive, no part of the compensation paid by the borrower to said agent for and in consideration of said services, and the said compensation is not so far fictitious or excessive or unfair as to support the conclusion that it was a mere circuitous device to evade the usury laws; and this is particularly true where, as in this case, the agent, in order to procure the loan, becomes indorser and furnishes security for a substantial portion of it. This statement of the rule is confirmed by the text, and the numerous cases cited, in 27 R. C. L., pp. 231-238; by

the cases cited in the notes, 46 Am. St. Rep., pages 194-199, and by Floyd v. Candler, 148 Miss. 200, 205, 114 So. 344. See, also, Pass v. New England Mortgage Security Co., 66 Miss. 365, 6 So. 239.''

The trial court was of the opinion in the case at bar that the compensation charged by the resident corporation was so fictitious, excessive and unfair as to support his conclusion that the whole scheme was a mere circuitous device to evade the usury laws. But in the instant case █ the borrower acknowledged in writing, as aforesaid, that the appellant resident corporation was acting as his agent and broker, and admits having read the note which disclosed that he was becoming the debtor of the nonresident corporation, the payee named in the note, and that the lender was not to receive the brokerage fee, as interest or otherwise, but that he was paying the same to the broker by the draft drawn on the nonresident corporation which he endorsed and delivered to the resident corporation.

The reference made in the opinion in the quotation above, as taken from the Grenada Bank case, to 27 R. C. L. 236, states in Section 38 of the text that: ''It is not unusual for a borrower to employ an agent or broker to negotiate a loan for him, and the amount paid for such services, added to the interest on the loan, may exceed the legal rate of interest, but the payment of such compensation will not make the loan usurious, so long as the lender was not employing the broker as his own agent or receiving from him any of the money paid by the borrower, even though the broker performed some services which might properly have been performed by the lender or his agent. . . .''

The more recent case of Abraham et ux. v. Friendly Finance Company of Biloxi, Inc., et al., Miss., 38 So. (2d) 323, 324, involved a situation where the appellee, a Mississippi corporation, obtained for the appellants a loan from the Industrial Finance & Thrift Corporation of Louisiana, and there the Court said that: ''From the

record, we conclude that the Mississippi Corporation is a separate and independent entity, and its brokerage charges for handling the transaction are not improper, and are not items to be computed in adjudging the liability of the Louisiana Corporation." The court had acquired jurisdiction over the Louisiana corporation by the suit to set aside, as usurious, a certain note and deed of trust executed by the Abrahams to the Louisiana corporation, or bearer, and to recover the payments made. The only distinction between that case and the case at bar is that it was necessary for the borrowers to wait for the proceeds of the loan until the note and deed of trust could be transmitted to the Louisiana corporation for acceptance and approval. Whereas, in the instant case the borrower received the money on a draft before his note was ever sent to the lender.

We do not think that the cases of Shannon v. Georgia State Building & Loan Association, 78 Miss. 955, 30 So. 51, 57 L. R. A. 800; Georgia State Building & Loan Association v. Shannon, 80 Miss. 642, 31 So. 900 and Castleman v. Canal Bank & Trust Company, 171 Miss. 291, 156 So. 648, are decisive of the point here involved. We think that the applicable rule is correctly stated in 55 Am. Jur. 334, Section 16: "While a lender may not be charged with usury on account of any commission or bonus paid by the borrower to his own agent or to an independent broker for services in negotiating or procuring a loan, a requirement that the borrower pay a commission to an intermediary through whom the loan was actually or apparently negotiated will be held to constitute usury if the court can see that the payment was really exacted as a consideration for the loan, in excess of legal interest, and not as compensation for the services of the intermediary to the borrower. And where the actual lender, in order to evade the statute, pretends to act as an agent or broker and exacts a commission for his supposed service in procuring the loan from a third

person, the court, upon proof of the deceptive character of the transaction, will declare it usurious. .. . ."

However, we do not think that the proof in the case at bar, when considered as a whole, is sufficient to warrant the application of the highly penal statute here involved as against the appellant, Tower Underwriters, Inc., in such manner as to require it to refund to the borrower the principal and interest paid to the nonresident payee in the note, even though paid through the office of the appellant resident corporation. Therefore, the decree of the trial court must be reversed and a decree rendered here in behalf of the appellant dismissing the bill of complaint.

Reversed and decree here for the appellant.