EARLY, et al. *v.* WILLIAMS, TRUSTEE, ETC.

No. 41530 October 10, 1960 123 So. 2d 446

*Horan & Horan,* Water Valley, for appellants.

324

*Murray L. Williams,* Water Valley, for appellee.

Lee, J.

Luther M. Early, on October 13, 1958, applied to Valley Loan Company, a copartnership, composed of D. B. Chittom and Charles E. Jenkins, loan brokers, for a loan of $715.00. On the next day, he and his wife, Bessie Lou Early, executed a note to Consumers Credit Corporation of Mississippi in the sum of $1,140.00, payable in twenty four equal monthly installments of $47.50 each. At the same time, they executed to Valley Loan Company, as their agent, endorser and guarantor of the note to the named lender, Consumers Credit Corporation of Mississippi, a chattel deed of trust, in the like amount of $1,140.00, on an automobile and certain household equipment, the property involved in this lawsuit, to secure the payment thereof.

The note of $1,140.00 comprised the amount of the loan, towit: $715.00, plus interest of $122.14, plus a service charge of $221.06 ($73.00 of which was subsequently rebated to the borrower), plus $22.80 for life insurance on the borrower, plus $34.20 for health and accident insurance on the borrower, plus $22.80 for insurance on the property securing the debt, and plus $2.00 for recording the papers.

The Earlys thereafter defaulted in their payments, and, in fact, paid only two installments for a total of $95.00.

On February 5, 1959, the Earlys executed to Consumers Credit Corporation of Mississippi a note in the sum of $1,440.00, payable in twenty four monthly installments of $60.00 each. The note contained the recitation that it was secured by a chattel deed of trust, and it was endorsed by Valley Loan Company. The instrument also recited that it comprised $1,045.00 paid to Consumers Credit Corporation of Mississippi, plus a service charge of $393.50 (made up of interest in the

sum of $154.29 and the broker's fee of $239.21), and plus $1.50 for recording.

The Earlys defaulted in these payments, in fact paying only $60.00 thereon. Thereafter on June 8, 1959, Murray L. Williams, trustee, made an affidavit in replevin in order to effect the seizure of the property, and the Earlys gave bond. The declaration in replevin was filed in the Circuit Court of Yalobusha County, and a general issue plea was filed by the defendants.

The evidence clearly established the facts as hereinbefore stated; and the trial judge gave a directed verdict for the plaintiff. From the judgment entered, the Earlys appealed.

The question here involves a construction of certain provisions of Chapter 170, Laws of 1958, known as the "Small Loan Regulatory Act". The first eight sections are not involved. Section 9(a), in regard to service charges, interest and the period of time to run for loans under $99.00, provides as follows:

"No loan of ninety-nine dollars ($99.00) or less shall extend for a period of time greater than that shown herein and no loan shall be made for less than fifteen dollars ($15.00), and the service charges and the legal rate of interest, when combined, upon loans handled by a licensee for a borrower for a fee, commission or charge to be paid by the borrower, shall not exceed the following amounts:

| Amount of Loan | | Maximum Monthly Charge for Interest & Service Charges Combined | Maximum Period of Time of Loan |
|---|---|---|---|
| Not less than | Not more than | | |
| $15.00 | $20.00 | $1.90 | 3 Months |
| 21.00 | 30.00 | 1.94 | 4 Months |
| 31.00 | 40.00 | 1.98 | 5 Months |
| 41.00 | 50.00 | 2.02 | 6 Months |
| 51.00 | 60.00 | 2.06 | 8 Months |
| 61.00 | 70.00 | 2.10 | 8 Months |
| 71.00 | 80.00 | 2.15 | 10 Months |
| 81.00 | 90.00 | 2.19 | 10 Months |
| 91.00 | 99.00 | 2.25 | 12 Months" |

Paragraph (b) thereof, which applies in this case, provides as follows: "On loans of one hundred dollars ($100.00) or more the service charges and the legal rate of interest, when combined, shall not exceed an amount equal to two per cent (2%) of the amount of cash received by the borrower multiplied by the number of months for which the loan is extended."

Under Paragraph (c) lenders may perform their service for smaller charges. Paragraph (d) thereof permits the lender to charge interest at six per cent for the entire period of the loan and "aggregate the principal and interest for the entire period of the loan, and divide the same into monthly (or weekly) installments."

Section 11 of the act provides that a licensee may charge any borrower on loans of $100.00 or more the actual cost of recording the security instrument; a reasonable fee paid to an attorney for investigating the title to any property given as security for a loan; the actual cost of the premium for insurance upon the property given as security for the loan in a company of the borrower's choice, licensed to do business in this state; and the actual cost of any premium paid for regular life, health, and/or accident insurance on the borrower, not in excess of the amount of the loan.

Section 12 provides in part: "If any licensee shall arrange, obtain, negotiate, procure, loan direct, or guarantee more than one loan for any borrower within a ninety-day period of time, the total service charge, or interest, charged or collected shall not exceed the service charge or interest which would have been allowable under this act had the aggregate sum received by the borrower in the several loans been handled, negotiated or loaned in one loan originally."

Thus it may be seen that, under the provisions of paragraph (b) supra, the appellee had the authority to collect as service charges and interest, combined, "two per cent (2%) of the amount of cash received by the borrower multiplied by the number of months for which

the loan is extended". Two per cent of $715.00 is of course $14.30. When this is multiplied by twenty four, the number of months over which the loan is extended, the total becomes $346.20. Now the appellee, in the first instance, collected $343.20, and thereafter rebated $73.00 thereof.

Under paragraph (d), it was permissible to "aggregate the principal and interest for the entire period of the loan". The sum of the several items, other than interest, was $1,017.86. Permissible interest on that amount at six per cent, under said paragraph (d), for twenty four months equaled $122.14, the amount of interest actually charged. This complied with the law. The combination of this amount of interest with the broker's fee of $221.06 ($73.00 of which was later rebated) did not violate the provisions of paragraph (b), supra. The other items were clearly chargeable under Section 11. What has been said in regard to the first loan is likewise applicable to the second where the service charge of $393.50 (made up of interest in the amount of $154.29 and the broker's fee of $239.21) did not violate paragraph (b), supra. This is clearly true because more than ninety days elapsed between the making of the two loans.

It seems incredible that any borrower, to get the sum of money which appellants received, would be willing to incur the stated expenses incident thereto. This is especially true as to the enormous brokerage fee. The right of a broker to charge a fee for his service in procuring and guaranteeing a loan has long been recognized in the jurisprudence of this state. See Tower Underwriters Inc. v. Lott, 210 Miss. 389, 49 So. 2d 704. The Court cannot prevent people, who are in their right mind and under no disability, from making contracts nor rescue them from their folly. Obviously this was an improvident contract that the appellants should not have made. But Chapter 170, Laws of 1958, supra, expressly authorizes contracts such as are found in this

case; and a party cannot be penalized as long as he complies with the law.

 █ The first loan was fully paid out of the second. Under the evidence, these two loans were separate transactions. Thus the appellee did not violate the law when it included, in both instances, the service charges as made, inasmuch as those charges were in strict compliance with the provisions of the "Small Loan Regulatory Act", supra.

These transactions were within the law. There was no obligation on the part of the appellee to execute a second loan. The Earlys could have gone to a different broker for the second loan. Manifestly the two notes constituted separate transactions. The learned trial judge so held. Consequently the judgment must be affirmed.

Affirmed.

*Hall, P. J.,* and *Holmes, Ethridge* and *McElroy, JJ.,* concur.