Hooper, et al. *v.* Aetna Finance Company of Jackson

No. 42441          November 5, 1962          145 So. 2d 907

*Lee, Moore & Countiss, Pyles & Tucker, Creekmore &
Beacham,* Jackson, for appellants.

*Butler, Snow, O'Mara, Stevens & Cannada, Earl R. Cruthirds,* Jackson, for appellees.

McELROY, J.

Aetna Finance Company of Jackson, appellee, filed a declaration in the County Court of the First Judicial District of Hinds County, Mississippi, seeking to recover a monetary judgment representing the balance due on an installment promissory note. The makers of this note were the defendants Sherman Hooper and Betty Jo Hooper, and the defendants Lillie J. Covington and Julius W. McKay were co-makers. The county court awarded a judgment for the appellant stating that the charges were usurious. The case was appealed to the Circuit Court of Hinds County and this court reversed the county court and awarded the appellees a money judgment in the total sum of $1,303.06.

All of the facts were stipulated with the exception of the testimony of one witness. This witness testified as an expert and merely testified as to computations based upon figures that were in the record. The basic facts as stipulated by the parties are as follows:

Aetna Finance Company of Jackson is a Mississippi corporation and was the holder of a proper license for handling loans issued pursuant to the Small Loan Privilege Tax Act, Chapter 168, Laws of 1958, Regular Session of the Mississippi Legislature, and that said license was in full force and effect at all times set forth in the declaration.

All-State Acceptance Corporation is a Missouri corporation duly qualified to do business in the State of Mississippi and was the holder of a proper and valid license for lending money pursuant to the Small Loan Privilege Tax Act, Chapter 168, Laws of 1958, Regular Session of the Mississippi Legislature, and that said license was in full force and effect at all times mentioned in the declaration.

Prior to the loan to Sherman Hooper, et al., All-State Acceptance Corporation, as a licensee authorized to lend

money pursuant to the above referenced statute, entered into an agreement with Aetna Finance Company of Jackson, a licensee authorized to arrange loans pursuant to the above referenced statute. A copy of this agreement is made an exhibit to the stipulation and provides, in substance, that Aetna shall arrange, negotiate, obtain and procure loans of money by All-State for borrowers in the City of Jackson, Mississippi, pursuant to the exercise of its privilege as a licensee under and in accordance with the above referenced statute and such regulations as may be issued pursuant thereto. The agreement expressly provides that Aetna shall render all such services as are permitted by applicable law and regulations to be rendered by it as a licensee, including the cashing of drafts drawn by borrowers on All-State for payment of proceeds of loans, obtaining the borrowers' notes evidencing such loans, endorsing each such borrower's note and forwarding such drafts, notes and other loan papers to All-State. The interest to be charged by All-State and the service charges to be charged by Aetna are stipulated. All-State agrees that upon receipt of such drafts, notes and other papers that it shall honor such drafts, remitting to Aetna the amount thereof and crediting the service charges to a reserve to be maintained by All-State as security for Aetna's guaranty of said notes. Provision is then made for Aetna to remit to All-State any collections actually received by Aetna on any notes.

On July 25, 1958, the defendants executed a contract, Exhibit ''B'' to the stipulation, under which they employed Aetna Finance Company of Jackson, a licensee under the Small Loan Privilege Tax Act of Mississippi, to negotiate a loan in their behalf. Under this contract, Aetna Finance Company of Jackson was appointed as agent and attorney-in-fact to obtain a loan in the amount of $1,076.95. Under the contract, if the loan was obtained, then defendants agreed to pay Aetna a service

charge of $372.20, which was to cover all charges for services rendered or to be rendered in connection with the loan for the accounting, guaranteeing, endorsing, collecting and other actual services rendered by Aetna in connection with any note to be signed in favor of the licensed lender. Under this contract it was further provided that the maker was to draw a draft on the lender and that Aetna would cash such draft "as an accommodation and service to me if requested". The contract further provided as follows:

"In the event that the Aetna Finance Company has cashed a draft for me drawn upon a prospective lender and said lender refuses my loan or rejects or does not honor the draft, then I agree to promptly repay the same without interest and the Aetna Finance Company will refund any sum paid for service charge herein, and I shall not be obligated to pay any service charge, fee, commission or charge whatsoever."

The above referenced contract further provided that the maker could make payments directly to the lender or "it shall be optional with me to leave payments at the office of the Aetna Finance Company to be transmitted for my account to the lender who holds my note".

Said contract further provided:

"The Aetna Finance Company shall have the right to co-mingle such payments with its other funds or to retain such payments until convenient to make delivery to lender. Payments received by it may be transmitted by Aetna's check in favor of the lender, or as otherwise agreed by Aetna and lender, covering such funds and similar funds of other customers. It is understood that such payments on account of my note, shall not constitute a payment until actually received by the lender."

Pursuant to the foregoing contract, the makers executed a promissory note payable to All-State Acceptance Corporation, a chattel deed of trust, and a customer's

draft in the amount of $1,162.00 which was drawn on All-State Acceptance Corporation by Sherman Hooper.

The customer's draft was then endorsed by Sherman Hooper and presented to the representative of Aetna and Aetna cashed said customer's draft. This was all done on the same date, to-wit, July 25, 1958.

On July 31, 1958, Aetna forwarded to All-State the original note signed by Sherman Hooper and the other makers and endorsed by Aetna, the above referenced chattel deed of trust, and other supporting papers, including the customer's draft. All-State honored the customer's draft and remitted the amount thereof to Aetna, this amount being actually received by Aetna on August 8, 1958.

After default had been made in the payment of said note, All-State called upon Aetna to purchase said note on the basis of its endorsement and Aetna paid off the balance due on said note and was the holder thereof at the time of the institution of this litigation.

All payments on the note had been properly credited and thus the amount due on said note was not controverted.

The rules and regulations as promulgated by the State Bank Comptroller in effect on July 25, 1958, were attached as an exhibit to and made a part of the stipulation.

The Department of Bank Supervision, Loan Division, Regulation VIII — Separation of Lender and Broker, Sec. B, thereof, states: ''The complete separation of lender and broker from the viewpoint of ownership interest of any kind does not prevent a broker, for the convenience of the borrower, from cashing any draft or other commercial paper which may be drawn on a lender for payment of the proceeds of a loan, nor shall it limit the services which the act provides a broker may render, namely, in arranging or negotiating the loan and for any accounting, guaranteeing, endorsing,

collecting, etc.; either himself or through other persons, so long as the total interest, service charges and other charges to the borrower do not exceed those allowed by the act."

■■ ■ Under these facts, as stipulated, there is only one issue to be decided by this Court and that is: Are the "service charges" as charged by Aetna to be classified as "interest"?

If the said "service charges" are classified as "interest" then the note is usurious. If the "service charges" are not classified as "interest" then the note is not usurious and the decision of the Circuit Judge should be affirmed.

The statutes involved in this proceeding are the "Small Loan Regulatory Act", Chapter 170, Laws of 1958, Regular Session of the Mississippi Legislature, and the "Small Loan Privilege Tax Act", Chapter 168, Laws of 1958, Regular Session of the Mississippi Legislature.

Section 5591-02, Miss. Code 1942, Rec., provides in part: "* * * (2) The term 'licensee' shall mean and include every person holding a valid license issued under the provisions of the Small Loan Privilege Tax Act (Secs. 5591-31 et seq.) of this state, except those specifically exempt by the provisions of this act, who, in addition to any other rights and powers he or it might otherwise possess, shall engage in the business of: (a) Handling loans for a borrower for a fee, commission or charge paid by the borrower, and who arranges, negotiates, obtains or procures a loan of money for the borrower, to be paid back in monthly installments or other regular installments for periods of more or less than one month, and whether or not the lender requires security from the borrower as indemnity for the repayment of the loan;

"(b) Lending money either directly or indirectly, to be paid back in monthly installments or other regular

installments for periods of more or less than one month, and whether or not the Lender requires security from the borrower as indemnity for the repayment of the loan;

"(3) The term 'service charge' as used in this act shall be construed to mean the amount charged a borrower, exclusive of the legal rate of interest, and other charges specifically allowed by this act, for services rendered or to be rendered the borrower by the licensee in arranging or negotiating a loan and for the accounting, guaranteeing, endorsing, collecting and other actual services rendered the borrower by the licensee; * * *."

Section 5591-09(e), Service charges, interest and period of time, Miss. Code 1942, Rec., provides as follows: "A licensee, lending money through the services of a broker or intermediary, shall not require such broker or intermediary to maintain or deposit a reserve with the lender in excess of twenty-five per cent (25%) of the total outstanding balances of all loans handled through such broker or intermediary."

Section 5591-13, Licensees not to engage in both lending and brokering, Miss. Code 1942, Rec., provides: "No licensee shall do a business of both handling loans and lending money, nor shall a person doing business of handling loans as defined herein be the owner of, have any share or interest in, directly or indirectly, or be financially interested in any manner in any person lending money as defined herein, nor shall any person lending money be owner of, have any share or interest in, directly or indirectly, or be financially interested in any manner in any person handling loans."

Section 5591-34, Comptroller to administer act, Miss. Code 1942, Rec., provides: "The provisions of this Act shall be enforced and administered by the State Comptroller of Banks and his duly authorized agents, representatives and employees."

In fact, the Small Loan Privilege Tax Act, Chapter 168 of the Laws of 1958, provides rules and regulations in which the Comptroller of Banks is to administer the Act; how licenses are obtained; the bond required; penalty in paying fees, the forms of license, change of license and discontinuance of business and recovation of license.

Many cases have been cited by the Mississippi Supreme Court concerning the problem of regulation of small loan business. Some of these cases include Tower Underwriters, Inc. v. Lott, 210 Miss. 389, 49 So. 2d 704; General Contract Corp. v. Bailey, 218 Miss. 484, 67 So. 2d 485; Alt, et al. v. Bailey, 211 Miss. 547, 52 So. 2d 283, and other cases.

All of these cases cited are cases prior to the Small Loan Regulatory Acts of 1958. After reading the interesting briefs on both sides and an examination of the record, we are of the opinion that the objections made in this case are fully legalized under this act. The brief of the appellants is to be commended as a vigorous charge against such legislation. However the questions raised in their brief cannot be handled by the Supreme Court and of course are entirely matters to be settled by the legislative branch of our government. These questions were gone into in the case of Early, et al. v. Williams, Trustee, etc., 239 Miss. 320, 123 So. 2d 446. It was said in that opinion as follows: ''The question here involves a construction of certain provisions of Chapter 170, Laws of 1958, known as the 'Small Loan Regulatory Act'. *** The right of a broker to charge a fee for his service in procuring and guaranteeing a loan has long been recognized in the jurisprudence of this state. See Tower Underwriters, Inc. v. Lott, 210 Miss. 389, 49 So. 2d 704. * * * Obviously this was an improvident contract that the appellants should not have made. But Chapter 170, Laws of 1958, supra, expressly authorizes contracts such as are found in this

case; and a party cannot be penalized as long as he complies with the law."

We hold these transactions were within the law and that the appellant was not obligated to make such a contract. He signed all of the papers in question, made all authorization in writing and authorized everything done in the transaction and since Chapters 168 and 170, Laws of 1958, authorizes such transactions, we are of the opinion that the case should be affirmed.

Affirmed.

*McGehee, C. J., and Ethridge, Rodgers, and Jones, JJ.,* concur.