JACKSON INVESTMENT COMPANY, et al. *v.* WINGO

No. 42653 January 4, 1964 159 So. 2d 175

*Ross R. Barnett, Jr., Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellants.

*Henry Edmonds,* Jackson, for appellee.

KYLE, J.

Willie Mae Wingo, complainant below, brought suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against Jackson Investment Company and Moore Finance Corporation, both Mississippi corporations, as defendants, praying that her title to the land described in the bill of complaint be confirmed and that a deed of trust executed by her predecessor in title, Willie Dixon, now deceased, to Ross

R. Barnett, Jr., as Trustee, be cancelled as a cloud on her title. There was a decree in favor of the complainant and from that decree the defendants have prosecuted an appeal to this Court.

The bill of complaint charged that Willie Dixon was the owner of the land described in the bill of complaint on December 9, 1961, when he executed a deed of trust to Ross R. Barnett, Jr., as Trustee, for the use and benefit of the defendant Jackson Investment Company, to secure the payment of a purported indebtedness said to be due by him to Jackson Investment Company, a copy of which deed of trust was attached as Exhibit ''A'' to the bill of complaint; that the defendant Moore Finance Corporation acted as a purported broker in connection with the above mentioned transaction, receiving a brokerage fee or service charge, and purportedly endorsing the installment note which evidenced said purported indebtedness and which was secured by said deed of trust; that in connection with said transaction the said Willie Dixon, at the time of the execution of the note, was required to obtain a policy of credit life insurance, being Policy No. C3119, issued by Carolina Home Life Insurance Company, for which he paid $77.64, and which covenanted, in the event of the death of the said Willie Dixon, to pay off the unpaid balance of said indebtedness then due and owing to defendant Jackson Investment Company, the defendant Moore Finance Company being named as ''first beneficiary'' in said policy, a copy of which was attached as Exhibit ''B'' to the bill of complaint.

The bill of complaint further charged that Willie Dixon died on or about July 28, 1962, leaving as his only heirs at law his mother, two sisters, including the complainant, and one brother; and that on August 6, 1962, all of the other heirs executed a warranty deed conveying their interest in the above described property to the complainant; that after the death of Willie Dixon

the insurance company paid to the defendant Moore Finance Corporation, as first beneficiary in the above mentioned credit life insurance policy, an amount more than sufficient to pay off any balance legally and justly due on said indebtedness, and that it became the duty of the defendant Moore Finance Corporation to apply the proceeds of said credit life insurance policy to the complete payment of said indebtedness, and that said indebtedness had been paid as a matter of law; yet the defendants still claimed a lien on the property described in above mentioned deed of trust and were threatening to foreclose said deed of trust for the payment of an alleged unpaid balance of said indebtedness; that there was no unpaid balance due or owing to the defendants, and that the complainant as the owner of said property was entitled to have said deed of trust cancelled as a cloud on her title.

The bill of complaint further alleged that, as additional security for the above mentioned indebtedness, Willie Dixon, on December 9, 1961, executed a chattel deed of trust on the furnishings and equipment situated in the dwelling house on the above described property, a copy of which said chattel deed of trust was attached as Exhibit "C" to the bill of complaint; and that complainant was entitled to have said chattel deed of trust cancelled of record.

The prayer of the bill of complaint was: (1) That by way of the discovery, defendants be required to file with their answer: (a) a true copy of the loan statement required to be furnished to the said Willie Dixon in connection with the above mentioned loan, and a statement of the disbursements of the proceeds of the loan; (b) a statement of all payments made on the loan by Willie Dixon, or on his behalf; (c) a statement of the amount received by the defendants, or either of them, by way of credit life insurance on the life of Willie Dixon under the terms of the credit life insur-

ance policy; and (2) a statement as to whether the indebtedness described in the land deed of trust, and the indebtedness described in the chattel deed of trust were not one and the same indebtedness. (2) That on the final hearing a decree be entered adjudging title to the land and personal property described in the bill of complaint to be vested in the complainant free of any lien or claim by reason of the above mentioned deeds of trust, and that the deeds of trust be cancelled of record as clouds on the complainant's title. The bill also prayed for general relief.

The copy of the land deed of trust attached as Exhibit "A" to the bill of complaint recited that the deed of trust was given to secure an indebtedness of $2558.88 evidenced by promissory note of even date therewith, payable in thirty-six (36) equal payments of $71.08 each, with the first payment due January 23, 1962, and the balance of payments to become due on the 23rd day of each consecutive month thereafter until paid in full. The same recitals were contained in the copy of the chattel deed of trust attached as Exhibit "C". The copy of the credit life insurance policy, issued by Carolina Home Life Insurance Company, attached as Exhibit "B" to the bill of complaint, showed that the policy was issued by the Company to Willie Dixon, therein called "the insured" for an original amount of $2558.88. Moore Finance Corporation was named as "first beneficiary". The policy provided "decreasing term life insurance", payable to the first beneficiary "as its interest may appear." As referred to in the policy, "the interest of the first beneficiary shall be the amount of indebtedness, if any, owing by the insured to the first beneficiary at the time of death."

In their answer to the complainant's bill the defendants admitted the execution of the above mentioned deeds of trust to secure the above mentioned indebtedness; and the defendants admitted that Willie Dixon

was required to obtain a policy of credit life insurance, being Policy No. C 3119, issued by the Caroline Home Life Insurance Company, for which he paid a premium of $77.64. But the defendants denied that the insurance company under the terms of the credit life insurance policy covenanted, in the event of the death of Willie Dixon, to pay off the balance of the above mentioned indebtedness then remaining unpaid. The defendants admitted that, on the death of Willie Dixon, the defendants or some of them, filed a claim on the insurance policy, and that same was duly paid by the insurance company. The defendants denied that the insurance company paid to the defendant Moore Finance Corporation, as first beneficiary in said policy, an amount more than was sufficient to pay any balance legally and justly due on the above mentioned indebtedness. The defendants averred in their answer that they had applied the money received from the insurance company on account of the death of Willie Dixon to the payment of the indebtedness then owing by Willie Dixon to the defendants, but the amount received was not sufficient to pay the entire balance then owing by the said Willie Dixon to the defendants, and there was still owing to the defendants the sum of $210.40.

The defendants admitted in their answer that Willie Dixon, prior to his death, had paid a total amount of $287.16 on the original debt of $2,558.88, and that the Carolina Home Life Insurance Company had paid to the defendants, in settlement of its liability under the credit life insurance policy, the sum of $2,061.32, which was applied to the debt, leaving the above mentioned balance of $210.40 still owing to the defendants and secured by the above mentioned deeds of trust.

The defendants denied that the purported loan had been fully paid; and the defendants denied that the deeds of trust mentioned in the bill of complaint should be cancelled as a cloud on the complainant's title. The

defendants admitted that the land deed of trust and the chattel deed of trust were given to secure the same purported indebtedness.

The case was tried on the pleadings and exhibits thereto and an agreed stipulation of facts.

The agreed stipulation of facts showed that Willie Dixon, in his lifetime, owned the real property described in the bill of complaint, subject to the lien of the deed of trust referred to in the bill of complaint, and subject to a first deed of trust lien in favor of Reid-McGee & Company; and that, after the death of Willie Dixon, on or about July 28, 1962, title to the property, with its contents, passed to the complainant, Willie Mae Wingo, by deed of the other heirs of Willie Dixon, and subject to the deed of trust liens mentioned above.

In the stipulation of facts it was also agreed as follows:

"Paragraphs IV and V: That the sum of $1,550.00 was actually disbursed to the said Willie Dixon, or on his behalf, in connection with the loan evidenced and secured by said deed of trust, the balance of $2,558.88 being composed of interest, calculated on the basis of a 36-months term, $304.25; brokerage fee, $624.64; life insurance premium $77.64 and recording fee $2.25. That defendant, Moore Finance Corporation as broker, endorsed the note payable to defendant, Jackson Investment Company, and was named first beneficiary in the policy of insurance described in the bill of complaint, same being a term reduction policy. That prior to his death, Willie Dixon paid on said indebtedness the sum of $287.16. That, on the death of Willie Dixon, defendants made a claim under said policy of insurance, and on August 27, 1962, received from the insurance carrier the sum of $2,061.32 which they applied against a balance on their books of $2,271.72, which balance was calculated on a term of 36 months less payments made. That said loan from its inception of December 6, 1961,

until receipt of said proceeds of said insurance policy, only actually ran for a term of about eight (8) months.

At the conclusion of the hearing, the chancellor found that the indebtedness mentioned in the bill of complaint and secured by the land deed of trust and the chattel deed of trust in suit had been fully paid as a matter of law, and that the appellee, Willie Mae Wingo, was entitled to the relief prayed for. A decree was therefore entered adjudging that the complainant was the sole owner of the land and personal property described in the bill of complaint, and directing that the above mentioned deeds of trust be cancelled and that the clerk enter a proper notation of such cancellation on the margin of the record of each instrument. From that decree the defendants have prosecuted this appeal.

The appellants have assigned and argued three points as ground for reversal of the decree of the lower court: (1) That the trial court committed reversible error in holding that the death of Willie Dixon affected the maturity of the loan; (2) that the trial court committed reversible error in holding that the full amount of the debt had been paid; and (3) that the trial court committed reversible error in holding that the lien of the above mentioned deeds of trust had been satisfied and the instruments could not be enforced.

It is argued on behalf of the appellants that the death of Willie Dixon did not alter or modify the contract to pay the loan in the manner and form and at the time specified in the contract. It is argued that the land and chattel deeds of trust executed by Willie Dixon on December 9, 1961, copies of which were attached to the bill of complaint, showed that Willie Dixon contracted a debt of $2,558.88 evidenced by his promissory note of even date therewith payable in 36 equal payments of $71.08 each, with the first payment due January 23, 1962, and the balance of the payments due on the 23rd day of each consecutive month thereafter until paid in

full; and that the complainant was conclusively bound by the terms of said instrument, and could not be heard to deny that such was the maturity of the debt; that the agreed statement of facts shows that the defendant Finance Company loaned to Willie Dixon the sum of $2,558.88, composed of interest calculated for the 36-months term fixed by the note, which was the sum of $304.25; brokerage fee $624.64; life insurance premium $77.64; recording fee $2.25; and the balance of $1,550.00 was actually disbursed to Willie Dixon; that the agreed statement of facts shows that Willie Dixon paid $287.16 prior to his death and that the insurance company paid to the defendants after Willie Dixon's death the sum of $2,061.31 in settlement of its liability under the credit life insurance policy; and that the unpaid balance, based on a full term of 36 months less payments, at the time of the filing of the complainant's bill, was $210.40.

It is argued on behalf of the appellee that the death of Willie Dixon modified the contract between the parties as to manner, form and time of payment as a matter of law, for the reason that the appellants, as a condition precedent to the making of the loan, had required Willie Dixon to procure a credit life insurance policy for the purpose of making available funds for the immediate payment of the unpaid balance of the indebtedness in the event of his death at any time during the term for which the loan was extended; and the appellants had thereby obligated themselves to accept payment of the unpaid balance of the indebtedness out of the proceeds of the credit life insurance policy which had been paid over to Moore Finance Corporation, as first beneficiary; that thus by their own acts the appellants had effected a complete change in the manner, form and time of payment of the indebtedness, and at the time of the filing of the complainant's bill the balance of the indebtedness had been overpaid by the amount of $508.58.

We think there was no error in the chancellor's finding that the indebtedness mentioned in the bill of com-

plaint and secured by the land deed of trust and the chattel deed of trust referred to in the bill of complaint had been fully paid as a matter of law, and that the complainant, Willie Mae Wingo, was entitled to the relief prayed for.

This is not a case of a borrower's voluntary repayment of a loan before maturity. Neither is it a case where the borrower is given an option to pay the entire amount of the indebtedness before maturity. It is a case of repayment of the unpaid balance of a loan prior to its maturity out of the proceeds of a credit life insurance policy which the lender required the borrower to procure at his own expense at the time the loan was made, for the purpose of providing funds for the repayment of such unpaid balance immediately in the event of the death of the borrower before the expiration of the 36-months period for which the loan was extended.

The appellants had a right under the Small Loan Regulating Act (Laws, 1958, Ch. 170, Sec. 5591-11, Code of 1942, Rec.) to require the borrower to procure life, health and/or accident insurance on the borrower, and to charge the borrower the actual cost of any premium paid therefor, where the amount of the insurance was not in excess of the amount of the loan and the premium therefor was in keeping with that usually and customarily paid for like insurance. But, when such insurance was required by the lender and funds were made available thereby for the immediate payment of the indebtedness as a result of the borrower's death prior to the expiration of the entire period of the loan, the unmatured installments of the indebtedness became due automatically and payable out of the proceeds of the credit life insurance, and the lender and the broker were obligated to accept such payment and were not entitled to recover, as interest and service charges, an amount in excess of two percent (2%) of the amount of cash

received by the borrower multiplied by the number of months the loan had run prior to the death of the borrower.

Section 9 (b) of the Small Loan Regulatory Act, supra, provides:

"On loans of one hundred dollars ($100.00) or more the service charges and the legal rate of interest, when combined, shall not exceed an amount equal to two percent (2%) of the amount of cash received by the borrower multiplied by the number of months for which the loan is extended."

Section 10 of the act provides that "If any charges in excess of those expressly permitted by this act are charged, contracted for or received, except as the result of an accidental or bona fide error, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever; * * *."

 █ In our opinion it was not the intention of the legislature to permit the lender or the broker in a case of this kind to collect the proceeds of the life insurance policy at the death of the borrower, and at the same time demand payment of interest and brokerage on the basis of a 36-months period when the number of months the lender was deprived of the use of his money was only eight months.

The fact that the lender, before parting with its money, required that the borrower procure a credit life insurance policy at his own expense, sufficient in amount to pay the indebtedness in the event of the death of the borrower prior to the maturity of all of the 36 monthly installments, clearly indicates that it was the purpose and intention of the parties at the time the loan was made that the unpaid balance of the indebtedness should become due and payable immediately out of the proceeds of the insurance policy, in the event of the death of the borrower prior to the maturity of the

last of the 36 monthly installments; and when the death of the borrower occurred eight months after the loan was made and the unpaid balance of the indebtedness became due and payable out of the proceeds of the term life insurance policy, the appellants were not entitled to demand interest and brokerage charges computed upon the basis of a loan for a period of 36 months.

The chancellor was correct in his finding that the indebtedness mentioned in the bill of complaint and secured by the land deed of trust and the chattel deed of trust in suit had been fully paid as a matter of law, and that the complainant was entitled to the relief prayed for.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J., and Ethridge, Gillespie and Rodgers, JJ.,* concur.