PATTERSON, Chief. Justice,
for the Court:
This case, in the nature of an accounting, involves the Small Loan Regulatory Law. Jackson Investment Company (hereinafter lender) and Tower Loan Brokers of Mississippi, Inc. (hereinafter broker) appeal from a decree of the Chancery Court of Stone County in favor of Jack Bates and his wife Virgie S. Bates (hereinafter borrowers).
Lender and broker are licensed under the Small Loan Regulatory Law or the Small Loan Privilege Tax Law. The borrowers approached broker for a loan and executed a contract with it on February 18, 1974. It provided they employ broker to negotiate a loan for borrowers from lender, mentioned in the brokerage contract, or any other lender licensed under the Small Loan Privilege Tax Law. The contract also provided that if broker were successful in obtaining a loan for borrowers, they would pay broker for all services rendered or to be rendered in negotiating the loan, including the accounting, guaranteeing, endorsing, collecting and any other actual service rendered in connection with the loan from lender.
Pursuant to this agreement broker obtained a loan from lender for borrowers who executed a promissory note on February 18, 1974, payable in eighty-four installments of $278 each, the first due March 25, 1974, for a total of $23,532. This sum was parceled for disbursement as follows: (1) Lender’s discount or interest, $6,538.26; (2) broker’s service charge, $6,113.74; (3) credit life premium, $700; (4) cash to borrowers, $10,000.
Broker was secured on its guarantee to lender by a lien on certain household furnishings and improved real property of the borrowers in Stone County. Afterward, the fire insurance policy on the real and personal property, subject to the lien, was endorsed to specify broker as the mortgagee and when renewed, broker was designated the mortgagee. This coverage, required by the deed of trust and the security agreement, was for $18,000, $13,000 on the mortgagors’ home and $5,000 on its contents.
*227 Sixteen payments of $278 each and one of $287, a total of $4,735, were made in repayment of the loan. The last made was that due July 1975, but the loan became delinquent when the August 25, 1975, payment was not made. Lender demanded payment from broker on its guarantee, the note was paid and broker received it by assignment from lender on October 1, 1975.
On September 15, 1975, borrowers’ home and its contents were destroyed by fire. In settlement of the fire loss the insurer on October 2, 1975, issued its draft for $18,000 payable to broker and borrowers as their interest might appear and delivered it to borrowers. Borrowers retained the draft without endorsement or tender in satisfaction of the loan when broker’s manager advised that $17,598.50 was necessary to retire the note.
On October 17, 1975, borrowers filed suit alleging the loan was usurious or became so when $17,598.50 was demanded in its satisfaction after the fire. The unendorsed draft was delivered to the chancery clerk of the county when the suit was filed to await disposition “as the Court finds proper.” Thereafter, the insurer, when sued by broker in the Circuit Court of Hinds County, issued another draft for $18,000 payable solely to broker upon its representation that the amount due from insureds exceeded $18,000. Simultaneously, the insurer stopped payment on the earlier draft although it had knowledge it had been tendered into court. On February 20,1976, the last draft was applied in payment of the note assigned to broker and the deed of trust was released.
The bill of complaint was then amended to allege that the interest on the note should be computed upon the basis of an involuntary payoff, entitling borrowers to a refund of $7,940.14, and again usury was alleged. The defendants in their answer denied usury, maintaining the loan was in compliance with the Small Loan Regulatory Law. However, broker offered borrowers a refund of $1,116.48 prepaid interest which it sought to recover through setoff by way of attorneys’ fees.
The facts are largely stipulated with little or no conflict in the evidence introduced. The chancellor held the loan was involuntarily terminated and concluded it equitable for it to be paid in accord with the rate of interest agreed upon for the time the borrowers had the use of the loan.
The chancellor calculated 27.75% (interest per annum) times $10,700 (principal) for seventeen months (use of loan) equaled $4,206.45. He concluded from these calculations, and evidently others not found in the record, that $10,171.45 would satisfy the loan. He deducted $10,171.45 from the insurance payment of $18,000 and awarded borrowers a judgment for $7,828.55, the difference, plus interest at the legal rate from February 20, 1976, when the draft was delivered to broker and the note was paid. The chancellor expressed no opinion upon the issue of usury as presented by the amended bill of complaint, evidently believing the demurrer to the original bill of complaint, which was sustained on the same question, disposed of the matter.
Lender and broker appeal contending the chancellor erred in:
1. Granting a judgment against defendant in the sum of $7,828.55 plus interest of 8% from February 20, 1976;
2. Failing to hold broker’s service charge of $6,113.74 was earned and that none of such sum was refundable by prepayment; and
3. Calculating the principal sum of the loan, the interest accruing on the loan, the time the loan was in force, and the prepayment refund.
The borrowers cross appeal, contending the chancellor erred in not declaring the loan usurious and in not exacting the statutory penalty.
We address the issue of usury first since this assignment, if meritorious, demands forfeiture of principal and interest, thereby leaving the other assignments moot. Although the chancellor did not rule upon the issue, we nevertheless think the denial of usury was implicit since no penalties were imposed.
*228 Mississippi Code Annotated section 75-17-1 (1972),[1] the usury statute, in effect February 18,1974, governs this transaction. It provides in part:
The legal rate of interest on all notes, accounts and contracts shall be six per cent (6%) per annum but contracts may be made, in writing, for a payment of a rate of interest as great as eight per cent (8%) per annum. And if a greater rate of interest than eight per cent (8%) shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory. If a rate of interest is contracted for or received, directly or indirectly, greater than twenty per cent (20%) per annum, the principal and all interest shall be forfeited, and any amount paid on such contract may be recovered by suit. . . . (Emphasis added).
The “Truth in Lending Disclosure Statement of Loan” executed by the borrowers to lender and broker specifies the annual percentage rate to be 27.75%. This is obviously in excess of the legal rate of 20% per annum authorized by statute. It is therefore usurious unless permitted by other statutes. Section 75-67-117(2)[2] of the Small Loan Regulatory Law provides:
(2) On loans of one hundred dollars ($100.00) or more the service charges and the legal rate of interest, when combined, shall not exceed an amount equal to two per cent (2%) of the amount of cash received by the borrower multiplied by the number of months for which the loan is extended.
In applying this formula we calculate as follows:
$10,000 (cash received) X 2% X 84 (number of months loan extended) = $16,800.
Therefore, the maximum amount the borrowers could have been charged for the combined service charge and lender’s interest was $16,800. Obviously this exceeds the lender’s interest of $6,538.26 and the service charge of $6,113.74, as well as their total of $12,652.
Again, if the same formula is computed by twenty-four months (interval from first payment until broker was paid), the result would be:
$110,000 (cash received) X. 2% X 24 (months until loan was paid) = $4,800.
This sum is less than lender’s interest of $6,538.26 and, of course, much less than the interest plus service charge. Moreover, if this formula is used to compute interest and service charge for the number of months the loan proceeds were used until the borrowers delivered the draft into the hands of the court on October 17, 1975, for disposition, the interest is necessarily much less.
Additionally, Section 75-67-117(4) provides:
(4) Where loans are made to a borrower, either directly or indirectly, and when such loans are to be repaid in monthly (or weekly) installments, the lender may charge interest only thereon at the rate of six percent (6%) per annum, or less, for the entire period of the loan and aggregate the principal and interest for the entire period of the loan, and divide the same into monthly (or weekly) installments, and may take security therefor by mortgage, deed of trust, or title, with waiver of exemption, upon and to real estate or personal property or both.
The amount loaned was $16,813.74 (sum of the note, $23,352, less interest of $6,538.26) and by this formula we compute:
$16,813.74 X 6% X 7 yrs. (84 mos.) = $7,061.77. Again, $7,061.77, the interest permitted by statute, was greater than $6,538.26, the sum of the interest agreed upon over the extended period of the loan.
However, if this formula is used in computing the interest rate by reducing the time of the loan, seven years (84 mos.), to two years (24 mos.) and retaining the sum of the interest for the extended period, a much higher percentage rate, of course, results.
*229 $6,538.26 (interest)/2 (yrs.) x $16,813.74 (principal) = 0.1944 (percentage rate per annum)
Computing the rate of interest using October 17,1975 (draft tendered into court) as the date payment was made, results in an annual interest rate of 23%.
S6.538.26 (interest^ 1% (yrs.) x $16,813.74 (principal) 0.2333 (interest rate per annum)
This exceeds the 20% interest rate per an-num permitted by Mississippi Code Annotated section 75-17-1 (1972) and is usurious if the formula permits such application as the borrowers contend.
In Early v. Williams, 239 Miss. 320, 123 So.2d 446 (1960), these statutory formulas were first approved, as they were later in Powell v. Sowell, 245 Miss. 53, 145 So.2d 168 (1962); Giles v. Friendly Finance Co. of Biloxi, 185 So.2d 659 (Miss.1966), appeal dismissed 385 U.S. 21, 87 S.Ct. 228, 17 L.Ed.2d 20 (1966), and Brockway v. Defenbaugh & Company, South, 216 So.2d 543 (Miss.1968), as expressing the law enacted although they were not considered praiseworthy. Our thoughts were expressed in Early, supra, and Powell, supra, and were repeated in Brockway, supra, as follows:
. “ ‘There is no disposition on the part of the Court to give praise to this legislative effort. It affords the opportunity for the charging of large brokerage fees. ***’”. . .
“It seems incredible that any borrower, to get the sum of money which appellants received, would be willing to incur the stated expenses incident thereto. This is especially true as to the enormous brokerage fee. * * * The Court cannot prevent people, who are in their right mind and under no disability, from making contracts nor rescue them from their folly. Obviously this was an improvident contract that the appellants should not have made. But Chapter 170, Laws of 1958, supra, expressly authorizes contracts such as are found in this case; and a party cannot be penalized as long as he complies with the law.”
“Therefore, since we cannot change the law as enacted by the legislature, we' must affirm.” (216 So.2d at 547)
While these cases are contended to control the present, we think they are distinguished because they were not concerned with involuntary prepayment.
It is true that logical argument can be made that in a loan in which the interest is discounted in advance the lender by requiring the borrower to procure insurance to retire the indebtedness if the security is destroyed, thereby contracts for a usurious rate of interest because the requirement acknowledges and demands prepayment before maturity. Nevertheless, we are of the opinion such requirement lacks contractual specificity to bring it within Section 75-17-1.[3] The loan would not be usurious if the contingency for which the insurance was obtained did not occur, but if it did occur, it may or may not be usurious depending upon the time of the occurrence. The potential of violation of the statute through a contingency is not, in our opinion, a specific contract as contemplated by the statute. We conclude the contract too indefinite for the imposition of a penal statute requiring, forfeiture even though the sum demanded by the broker in satisfaction of the loan appears excessive.
Moreover, the imposition of a penalty would be contrary, in our opinion, to the principles announced in Oxford Finance Companies, Inc. v. Gray, 317 So.2d 910 (Miss.1975), and Hood v. First National Bank in Meridian, 208 Miss. 658, 45 So.2d 251 (1950), the latter case holding Mississippi Code Annotated section 75-17-11 (1972) did not intend payment of a loan prior to maturity to increase its interest rate. The cross appellants’ assignment of error is without merit, in our opinion.
The appellants’ first and third assignments of error are merged for discussion. They concern the principal remaining, the rate of interest and the time of involuntary prepayment.
The trial court correctly held the loan involuntarily terminated and correctly invoked equitable principles for its pay *230 ment, in our opinion, because neither the note, the broker’s agreement nor the deed of trust provided any terms for its satisfaction through prepayment. In Oxford Finance Companies, Inc. v. Gray, 317 So.2d 910 (Miss.1975), we held that a lender by requiring a borrower to procure insurance sufficient to retire an indebtedness in the event of loss and such occurred prior to maturity, intended the unpaid balance to become immediately due and payable. We stated, in accord with the general rule, that involuntary payments are applied according to equitable principles so as to best protect the rights of each party.
Here the insurer issued its draft on October 2, 1975, payable to the parties as their interest might appear. The note was not paid nor the draft endorsed by the borrowers because a disagreement arose concerning the respective interest of the parties. Very probably this dispute resulted from the oversight of lender and broker in not making specific the terms for involuntary prepayment. The language of Oxford Finance, supra, “Holders of the note were not entitled to demand interest beyond the date of such insurance payment,” resolves the issue when prepayment is actually made. Unfortunately, it does not decide this controversy in which one of the issues is time of payment. The time of payment or the time when payment should have been made, necessarily involves the principal remaining, the interest and the sum needed to retire the note. These circumstances demand the status quo of the parties be preserved as closely as can be done in accord with their agreement so their best interest through equitable principles might be served. This does not permit penalty to one or enrichment of the other during the interim. Hoerner v. First National Bank of Jackson, 254 So.2d 754 (Miss.1971). See also Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954); and McClain v. Lamar Life Ins. Co., 178 Miss. 459, 172 So. 495 (1937).
Presently, lender was repaid part of the principal with interest as agreed when the note was executed. These payments continued through July 1975 and became delinquent after August 25, 1975, leaving the lender entitled to the August payment of $278, as agreed, plus additional legal interest because of the delinquency until it was paid or reasonably should have been. Although the fire intervened, the payment of $278 due on September 25, 1975, also became delinquent and remained so until the note was paid or should have been. The agreement of the parties can be closely preserved to this point in time, in our opinion, by requiring these payments to be made plus legal interest during the delinquency.
The draft was issued on October 2, 1975, and upon disagreement was tendered into court by the borrowers as complainants on October 17, 1975. We conclude the tender was the equivalent of payment on that date, terminating the interest. In Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954), we cited with approval, and therefore adopted, from 47 C.J.S. Interest § 55, p. 67, the following:
“ ‘The pendency of litigation between the parties to an existing debt concerning it will not of itself suspend the running of interest on such debt during such litigation, where the money is not paid into court.’ ” (221 Miss, at 873, 75 So.2d at 69)
And see Bolden v. Gatewood, 250 Miss. 93, 164 So.2d 721 (Miss.1964). We think this statement apropos because the present broker and borrowers were engaged in controversy, not frivolous, as to the amount each should receive. The complainants filed their suit and tendered the draft for disposition by the court, giving rise to the question — what more could the borrowers have done? We reject the appellants’ argument that the sum necessary to satisfy the loan should be computed by payment on February 20, 1976. We also think the trial court erred in computing principal and interest based on seventeen months, the time span payments were made, which puts the payoff date before the fire occurred. It necessarily follows-the court erred in determining the principal remaining and interest due because the computations were made upon an incorrect time period.
*231 The Small Loan Regulatory Law having received a construction in Oxford Finance, supra, that does not permit interest return for an extended period when the agreed time is reduced by involuntary prepayment, there remains to be determined whether the service charge should be proportionately reduced. In Jackson Investment Co. v. Wingo, 248 Miss. 388, 159 So.2d 175 (1964), we held:
In our opinion it was not the intention of the legislature to permit the lender or the broker in a ease of this kind to collect the proceeds of the life insurance policy at the death of the borrower, and at the same time demand payment of interest and brokerage on the basis of a 36-months period when the number of months the lender was deprived of the use of his money was only eight months. (248 Miss. at 398, 159 So.2d at 180)
The broker’s service charge of $6,113.74 contemplated services extended over eighty-four months which was reduced by involuntary prepayment, leaving the determination of a fair charge to equitable principles that would protect the best interest of both parties. We think it not illogical that the service charge be reduced to its monthly average and multiplied by the number of months, or parts thereof, the loan was in existence to reach a proper service charge. The result, in our opinion, will repay the broker for its services from the beginning of the loan until it was terminated, and we think this not inequitable to either the broker or the borrowers and is consistent with the loan's termination on October 17, 1975, which initially contemplated a service span of eighty-four months.
The broker concedes under Oxford Finance, supra, the borrowers are entitled to a refund of prepaid interest charges, but argues the refund should be offset by attorneys’ fees incurred in collecting the note through suit in the Circuit Court of Hinds County. We think the broker is not entitled to offset the attorneys’ fees because the borrowers had previously placed in litigation the issue of the amount each was to receive. The additional suit did nothing to hasten the payment of the note because the proceeds from the policy sufficient to retire the note had already been paid into court. The true issue was not payment, but rather the sum broker and borrowers were to receive. Withdrawing the tender of the draft into the Chancery Court of Stone County by stopping payment on it and designating the broker the sole payee was not a suit to collect a note upon which attorneys’ fees should be authorized. We think this is so because the actions are contrary to the general rule that a fund tendered into court cannot be withdrawn or paid except by court order. Griffith, Mississippi Chancery Practice, §§ 523 and 526 (2d Ed. 1950).
The cause is affirmed in part, reversed in part, and remanded for an accounting to determine the sum necessary to satisfy the note, the date of the involuntary payment being here determined as October 17, 1975.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.

. Amended July 1974.

. Repealed July 1974. Now found in Title 75, Chapter 17.

. If a rate of interest is contracted for or received .