Richard L. ROSENTHAL and Hinda
G. Rosenthal

v.

The UNITED STATES.

No. 604–83T.

United States Claims Court.

Nov. 5, 1986.

Stephen D. Gardner, New York City, for plaintiffs. Robert A. Kagan, Melanie J. Gnazzo, and Kronish, Lieb, Weiner & Hellman, of counsel.

W.C. Rapp, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger M. Olsen, for defendant. Mildred L. Seidman, of counsel.

## OPINION

MEROW, Judge:

This tax refund matter comes before the court on cross-motions for partial summary judgment. Upon consideration of the parties' briefs and supporting materials submitted for the record, it is concluded that, for the reasons stated herein, partial summary judgment is granted in favor of de-

fendant and denied as to plaintiffs' motion for partial summary judgment.[1]

### Facts

All the facts are stipulated.

Plaintiffs, Richard L. Rosenthal and Hinda G. Rosenthal, are husband and wife, with legal residence at Stamford, Connecticut. Plaintiffs used the cash method of accounting for the calendar years 1975, 1976 and 1977, the taxable years in issue.

Plaintiffs were the sole partners in Amcan Oil Producers (Amcan). Amcan was formed to participate in various oil and gas ventures and filed its federal income tax returns on the cash method of accounting.

In 1974, pursuant to an agreement with Jack J. Grynberg (Grynberg), Amcan formed a partnership with Grynberg for the purpose of drilling exploratory oil and gas wells on certain leased acreage in Colorado. Grynberg was to contribute to the partnership his interest in the leased acreage, and Amcan was to contribute $750,000 to be used by Grynberg to drill approximately 15 exploratory wells.

During 1975, Amcan determined that Grynberg had breached the agreement and thereafter Amcan refused to pay the costs claimed by Grynberg. On December 22, 1975, Grynberg filed an action in the United States District Court for the District of Colorado against Amcan for breach of contract, claiming substantial damages.

On December 31, 1975, Amcan and Marine Midland Bank—New York (Bank) executed a trust indenture. Article Two of the trust indenture provided that the Bank would hold the trust property "for the sole purpose of the payment of the obligation of the Grantor which may arise out of litigation pending against the Grantor relating to an agreement, made and entered into as of September 3, 1974 by and between Jack J. Grynberg and the Grantor, and the Partnership created thereby or to a letter agreement, dated as of May 23, 1974 by and between Jack Grynberg and Associates and the Grantor, wherein judgments are demanded against Grantor and another for monies alleged to be due and owing."

In determining the amounts transferred to the trust in each of the years 1975, 1976 and 1977, Amcan took into account the amounts claimed by Grynberg under the partnership agreement and in the litigation referred to above, which amounts were supported by invoices Amcan regularly received from Grynberg. Plaintiffs transferred to Amcan, and Amcan transferred to the trust, $295,776 in 1975; $300,505 in 1976; and $251,020 in 1977. Amcan took deductions in 1975, 1976 and 1977, of $295,776, $314,350 and $286,264, respectively. These sums represented the amounts transferred plus the net taxable income earned by the trust.

Grynberg did not sign or assent to the trust indenture and was not aware of its existence or of the payments to it.

In 1981, Amcan's litigation with Grynberg was settled by agreement between the parties. As a result of the agreement, Amcan transferred property and made cash payments to Grynberg. In 1982, the suit was dismissed with prejudice. None of the amounts transferred to the trust by Amcan was ever paid out of the trust to or for the benefit of Grynberg. None of the income earned by the trust was ever paid out of the trust to or for the benefit of Grynberg.

In 1982, the trust was terminated. All of the sums transferred to the trust by Amcan and all of the income earned by the trust since its inception (less expenses) were returned to Amcan.

Plaintiffs' joint federal income tax returns for taxable years 1975, 1976 and 1977 were timely filed with the Internal Revenue Service (IRS). The Commissioner of the IRS, in the Notice of Deficiency dated June 1, 1982, disallowed, *inter alia*, deductions with respect to the amounts transferred to the trust, plus the net taxable income earned by the trust. In this regard, plaintiffs' taxable income was increased by

---

1. Plaintiffs have requested oral argument in this matter. However, the briefing is comprehensive and it is concluded that oral presentation is not required to resolve the issues presented.

$295,776 for 1975, $314,350 for 1976 and $286,264 for 1977. Plaintiffs paid the additional taxes determined by the IRS and timely filed claims for refunds for the taxable years 1975, 1976 and 1977, and an amended claim for refund for the year 1977. When the claims were disallowed by the Commissioner of the IRS, this litigation followed.

### Discussion

In their claims for refund and in their briefs in support of their motion for partial summary judgment filed in this litigation, plaintiffs maintain that they are entitled to the deductions taken in the taxable years the funds were transferred to the trust (1975, 1976 and 1977) because they have satisfied all of the statutory requirements of 26 U.S.C. § 461(f),[2] which allows a deduction when taxpayers contesting an asserted liability transfer money or other property beyond their control to provide for the satisfaction of the asserted liability. Defendant argues, in support of its motion for partial summary judgment, that Amcan's payments to the trust in 1975, 1976 and 1977, fail to qualify for deduction under 26 U.S.C. § 461(f) and Treas.Reg. § 1.461–2(c)(1)(ii)[3] either because the funds were not put beyond the plaintiffs' control by the transfers to the trust[4] or because there was no written agreement "among" the trustee, the taxpayers and the claimant in the litigation, since Grynberg (the claimant) did not sign or otherwise assent to the trust agreement and, in fact, did not have any knowledge that there was such an agreement. In response, plaintiffs argue that, if Grynberg had to sign or otherwise assent to the trust agreement in order to satisfy requirements of the Treasury regulation, the regulation must be held invalid because it adds requirements which are beyond the language and intent of the statute.

Thus, the primary issue to be decided is whether the transfers of money by Amcan to a trustee to provide for payment of the asserted liability qualified for the deduction

2.  26 U.S.C. § 461:
    "(f) CONTESTED LIABILITIES.—If—
    (1) the taxpayer contests an asserted liability,
    (2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
    (3) the contest with respect to the asserted liability exists after the time of the transfer, and
    (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year),
    then the deduction shall be allowed for the taxable year of the transfer. This subsection shall not apply in respect of the deduction for income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States."

3.  Treas.Reg. § 1.461–2. "Timing of deductions in certain cases where asserted liabilities are contested.
    *       *       *       *       *
    (c) *Transfer to provide for the satisfaction of an asserted liability*—(1) *In general.* A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property beyond his control (i) to the person who is asserting the liability, (ii) to an escrowee or trustee pursuant to a written agreement (among the escrowee or trustee, the taxpayer, and the

person who is asserting the liability) that the money or other property be delivered in accordance with the settlement of the contest, or (iii) to an escrowee or trustee pursuant to an order of the United States, any State or political subdivision thereof, or any agency or instrumentality of the foregoing, or a court that the money or other property be delivered in accordance with the settlement of the contest. A taxpayer may also provide for the satisfaction of an asserted liability by transferring money or other property beyond his control to a court with jurisdiction over the contest. Purchasing a bond to guarantee payment of the asserted liability, an entry on the taxpayer's books of account, and a transfer to an account which is within the control of the taxpayer are not transfers to provide for the satisfaction of an asserted liability. In order for money or other property to be beyond the control of a taxpayer, the taxpayer must relinquish all authority over such money or other property."

4.  Plaintiffs are the sole partners of Amcan. As such, income and deductions attributable to Amcan are passed through the partnership to the plaintiffs and are reflected on the plaintiffs' federal income tax returns. Thus, even though Amcan is the grantor of the trust, in order to decide if the transfers to the trust qualify for the deduction under § 461(f), it is necessary to determine if the transfers were made beyond the control of the plaintiffs.

under § 461(f) and the Treasury regulation in 1975, 1976 and 1977, the taxable years of the transfers, although the person asserting the liability had no knowledge of and, concededly, did not agree to the establishment of the trust. As a correlative matter, if the Treasury regulation is found to require the claimant's written assent or signature to the trust agreement, whether the regulation must be held invalid, or whether, by such a requirement, the regulation reasonably and consistently interprets the statutory provision and should be upheld, must also be decided.[5]

In *Poirier & McLane Corp. v. C.I.R.*, 63 T.C. 570 (1975), *rev'd*, 547 F.2d 161 (2d Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977), the Tax Court and the Second Circuit were faced with similar facts[6] and the same issues as those presented by the instant case. In that case, third parties filed civil suits against the taxpayer for damages claimed to have been incurred as a result of alleged trespass and negligence committed by the taxpayer's employees while working on two construction jobs. The taxpayer contested the claims. However, on December 31, 1964, the taxpayer transferred $1,100,000 in trust for the payment of the obligations on the pending claims which amounted to nearly $15 million. The taxpayer's agreement with the trustee provided that the trustee was to hold the transferred funds in trust "for the sole purpose" of the payment of the taxpayer's obligations expected to rise out of the litigation pending against the taxpayer as a result of the construction jobs. The agreement listed by name the corporations and individuals who had filed

the suits to which the agreement referred. The trust agreement was not signed by the claimants listed, nor were they made aware of the existence of the agreement. The taxpayer claimed a deduction for the $1,100,000 on its 1964 income tax return. The Commissioner disallowed the deduction, in part, determining that the transfer did not meet the requirements of § 461(f). The majority of the Tax Court held that the transfer of the funds to the trust constituted a transfer of funds beyond the control of the taxpayer in accordance with § 461(f). In essence, the majority found that the claimants were beneficiaries of the trust and the taxpayer retained no right to control any portion of the trust funds nor to revoke the trust, but merely was a contingent remainderman entitled to those amounts remaining after disposition of the claims. In fact, in October 1969, the taxpayer notified the trustee that all the claims referred to in the trust agreement were disposed of and requested return of the trust principal, plus any interest earned. The full amount of the principal, plus interest, minus trustee fees, was returned to the taxpayer in November 1969.

The majority of the Tax Court found that Treas.Reg. § 1.461-2(c)(1) was valid because, properly interpreted, the regulation did not require the claimant-beneficiaries in the case to sign the trust agreement in order for the agreement to be "among" the trustee, the taxpayer and the claimant. In this regard, the Tax Court stated at 63 T.C. 580 that "neither section 461(f)(2) nor its legislative history reflects any congressional intent to require a trust agreement exe-

---

**5.** *See Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948), in which the Supreme Court stated:

"This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons."

**6.** One factual difference between the two cases is that the taxpayer in *Poirier & McLane Corp.* used the accrual method of accounting while

the taxpayers in the present case use the cash method. For purposes of § 461(f), the taxpayer's method of accounting makes no difference to allowance of the deduction as long as all the requirements are met. *See* the Senate report accompanying its passage which contains examples of its application to both cash and accrual basis taxpayers. S.Rep. No. 830 (Part 2), 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 700, 747. Also, the regulations issued under § 461(f) indicate they apply to cash as well as accrual basis taxpayers. Treas.Reg. § 1.461–2(a)(4), (e)(1) and (g)(6).

cuted for the purposes of that section to be signed by the beneficiaries." Thus, the taxpayer was allowed a deduction of $1,100,000 in the taxable year the funds were transferred to the trust because, according to the Tax Court, all the requirements of the Treasury regulation were met.

On appeal to the Second Circuit, the validity of Treas.Reg. § 1.461–2(c)(1)(ii) was also upheld as a reasonable interpretation of 26 U.S.C. § 461(f). However, the court, reversing the Tax Court, concluded that, under the regulatory requirements, the person asserting the liability must "assent" or "agree" to the establishment of the trust in order for the written trust agreement to be "among" the taxpayer, the trustee and the person asserting the liability. The Second Circuit found that the "secret" trust agreement did not satisfy the regulatory requirements and the taxpayer was not allowed the deduction in the year of the transfer.

The court reasoned, at 547 F.2d 165–67, as follows:

Payments to trusts are not mentioned in the legislative history of § 461(f), for prior to its enactment, there were no tax or other advantages to be gained by creating a trust to pay contested liabilities. * * * The issue in this case, however, is whether Poirier & McLane's unilateral transfer of assets to a reserve held in trust is the equivalent of payment to an escrow account. In sum, does it constitute a tax event that warrants * * * tax deduction in the year of transfer? We believe it does not.

\* \* \* \* \* \*

The Commissioner closely followed the outlines of the Senate Report in promulgating Reg. 1.461–2(c)(1). The Regulation provided that deductions were only permitted for payments to trusts that resembled the escrow agreement specifically described by Congress. * * *

The language in the Regulation is clear that an essential requirement for deduction is that the claimants must agree to the establishment of the trust. This requisite forms an integral part of the Regulation, and effectuates the intent of § 461(f). * * *

The wisdom of this Regulation is manifested by the facts of this case. Poirier & McLane has failed to offer any reason to regard 1964 as the year its liability accrued. The claims against it had been filed more than four years earlier. The only significant event occurring in that year was the Corporation's unilateral decision to establish a contingency reserve. By transferring funds to a trust, rather than an ordinary bank account, it has asserted that a deductible "payment" was made under § 461(f). * * * Poirier & McLane was not *required* to make any payment in 1964. Nor did the exigencies of litigation compel the company to establish the trust. Its decision to do so was totally voluntary, unilateral and principally dictated by tax motives.

A statute designed to "realistically match receipts and disbursements" for specific taxable years should not be interpreted to permit a taxpayer to create a deduction in a year of his choosing by the simple expedient of transferring assets to a trust. * * *

The requirement that claimants be made parties to the trust agreement is also a useful safeguard against abuses of 26 U.S.C. § 461(f). Unlike direct payments to plaintiffs, transfers to trusts can form great potential for misuse. There is little reason to assume solicitude by the settlor towards the beneficiary of such a trust. * * *

If the claimants are aware of the trust arrangement, as they are required to be under the Regulation, they can ensure that its assets remain beyond the taxpayer's control. * * *

(Footnotes omitted.)

■ The Second Circuit's decision in *Poirier & McLane Corp.* that the Treasury regulation requires the person asserting the liability to assent in writing to the establishment of the trust to provide for the satisfaction of the asserted liability is primarily based on the Senate Finance

Committee explanation regarding § 461(f) which, in part, provides:

> A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property to the person who is asserting the liability, or by a transfer to an escrow agent provided that the money or other property is beyond the control of the taxpayer. However, purchasing a bond to guarantee payment of the asserted liability, an entry on the taxpayer's books of account, or a transfer to an account which is within the control of the taxpayer is not a transfer to provide for the satisfaction of an asserted liability.

S.Rep. No. 830 (Part 2), Technical Explanation of the Bill, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 701, 746. Thus, a transfer of money or property to the person asserting liability would qualify for the deduction under § 461(f) because the taxpayer retains no control over the terms of this type of transfer. Conversely, an entry on the taxpayer's books would not qualify for the deduction being entirely under the taxpayer's control. In between these two extremes, a transfer to an escrow agent would qualify for the deduction if the transfer is beyond the taxpayer's control. Therefore, a transfer to an account within the taxpayer's control would not qualify for the § 461(f) deduction.

■ The regulation authorized another kind of payment, one made to a trustee pursuant to a written agreement "among" the trustee, the taxpayer and the person asserting the liability. It must be inferred that the regulation allows this type of payment for purposes of the deduction under § 461(f) because it presents an analogous arrangement to that of a transfer of money or property to an escrow agent, which is explicitly provided for by the legislative explanation. Thus, the type of trust arrangement which would qualify for a deduction under § 461(f) must be set up like an escrow agreement pursuant to which money or property has been transferred beyond the taxpayer's control.

In the present case, the parties disagree over whether the plaintiffs retained control over the assets transferred to the trust. This dispute focuses around the question of whether the beneficiary of a trust established for the payment of a creditor is the grantor or the creditor.[7]

According to the plaintiffs, the fact that Article Two of the trust agreement specifically states that the trustee is to hold the corpus of the trust "for the sole purpose of the payment of the obligation of the Grantor [to the creditor] * * * " and that Article Nine states that the trust terms are not subject to revocation supports their position that the trust assets were placed beyond their control. Furthermore, plaintiffs argue that Grynberg (the claimant/creditor) is the trust beneficiary, even though he was unaware of the trust's existence; and, as the trust beneficiary, the trust terms cannot be altered or revoked without Grynberg's consent under applicable state law. Thus, according to the plaintiffs, the trust is irrevocable and in compliance with the regulation. In addition, as the beneficiary, Grynberg is a party to the written trust agreement, which makes the agreement "among" the taxpayers, the trustee and the person asserting the liability, as required by the regulation. In response, the government argues that, absent the creditor's agreement or knowledge of the transfer of assets to the trustee, the grantor/debtor is the beneficiary of the trust.

---

7. It is noted that whether the grantor or the creditor is the beneficiary of this type of trust is a question of the grantor/debtor's intention. *See* Restatement (Second) of Trusts § 330, Comment h (1957):

"If the transfer of the property to the third person was not made in pursuance of any agreement with the creditor, the inference is that the trust is for the debtor and not for the creditor, and the debtor can revoke the trust at any time without the consent of the creditor. In such a case the transfer is ordinarily made by the debtor simply for his own convenience, without any intention to confer upon the creditor irrevocable rights. Even in such a case, however, the debtor may manifest an intention to create a trust in favor of the creditor and to give him an interest in the property of which the debtor cannot subsequently deprive him by revoking the disposition."

As the sole beneficiaries, the plaintiffs may revoke the trust or any of its terms at will. It follows, according to the government, that the assets have not been transferred beyond the plaintiffs' control. Moreover, if Grynberg is not the beneficiary of the trust, there is no written agreement "among" the debtor, the trustee and the person asserting the liability and the statutory and regulatory requirements are not satisfied, the government contends.

As mentioned in note 7, it is the grantor/debtor's intention which determines who is the beneficiary of a trust established for payment of a creditor. Although Amcan was the grantor of the trust, since plaintiffs are the sole partners of Amcan, it is clearly plaintiffs' intentions which are at issue herein. In this regard, the plaintiffs claim the trust was intended to benefit Grynberg, their creditor. However, even if, based on statements in the trust indenture, Grynberg is found to be the trust beneficiary, the issues concerning whether the plaintiffs are to be allowed a deduction under § 461(f) are not resolved thereby.

As the Second Circuit stated in *Poirier & McLane Corp.* at 547 F.2d 165, in determining if a payment is deductible under § 461(f), it is not sufficient that the transfer is made beyond the taxpayer's immediate control if the timing and the amount of such transfers are still entirely within the discretion of the taxpayer. In this case, the plaintiffs set up the trust and made the first payments thereto in 1975, the year Grynberg filed suit against them in District Court. The plaintiffs support the amounts they transferred to the trust in the years 1975, 1976 and 1977, with invoices received from Grynberg and with the partnership agreement itself. In this regard, there appears to be some proximity between the time Grynberg filed suit and the amounts he claimed were due him and the timing and the amounts of the transfers by Amcan, which factors were not apparent to the Second Circuit in *Poirier & McLane Corp.* However, it remains unclear why the plaintiffs should be allowed deductions in taxable years 1975, 1976 and 1977, for Amcan's unilateral payments to the trust, when there was no legal or business reason for the plaintiffs to make the payments to the trust in those particular years. In this connection, there is nothing in the record to indicate that the plaintiffs were required to make those payments pursuant to the litigation. In addition, there is no indication that, if they did not set money aside by transferring funds to the trust in 1975, 1976 and 1977, they would not have the money or other assets to satisfy their future liability under Grynberg's suit when a final decision was reached. As it turned out, trust assets were not even used to pay Grynberg's claim, which was settled in 1981. Instead, the plaintiffs, through Amcan, their partnership, transferred other property and cash to Grynberg in settlement of his claim.[8] With respect to that settlement, there is no evidence in the record that the amount agreed upon in 1981 equalled or even approximated the amounts Amcan transferred to the trust in taxable years 1975–77. In 1982, the principal and income held by the trust were returned to Amcan.[9] Thus, the trust was terminated without Grynberg, "the beneficiary," receiving any of the trust assets or even being aware of the trust's existence or purpose. In sum, the plaintiffs' decisions to have Amcan transfer funds to the trust in 1975, 1976 and 1977, were voluntary, unilateral, and, in the absence of any business or economic motivation, appear to have been chiefly dictated by tax reasons,

---

**8.** As cash method taxpayers, if § 461(f) had never been enacted or if they failed to qualify for the deduction allowed thereunder, the plaintiffs would be allowed a deduction only in the year of actual payment, *i.e.,* in 1981, when, pursuant to the settlement agreement, Amcan transferred property and made cash payments to Grynberg. Treas.Reg. § 1.461-1(a)(1).

**9.** Pursuant to the statement of the grantor (in reality, the plaintiffs) that the asserted liability had been satisfied or disposed of, Article Five of the trust indenture directs the trustee to deliver trust property, remaining after disposition of the obligation, to the grantor. Thus, final disposition of trust assets, including the timing thereof, was entirely under the grantor's control.

as the Second Circuit found was the case regarding the transfer involved in *Poirier & McLane Corp.*

Even if Grynberg is the beneficiary of the trust, plaintiffs exercised discretion as to the timing and amount of the transfers to the trust, which results in control over the terms of the transfers. Plaintiffs' argument that, under a properly drafted trust agreement, the grantor can dictate all the terms of the transfer and still give up control over the assets transferred is not persuasive for purposes of the deduction under § 461(f). Retention of control over the timing and the amounts of the transfers is not consistent with the Congressional intent behind the enactment of § 461(f). To mitigate the indicia of control over the transferred funds, plaintiffs needed to have Grynberg's agreement to the establishment of the trust. If Grynberg was aware that amounts were transferred to a trustee to hold in trust for the purpose of future payment of Amcan's asserted liability to him, Grynberg's knowledge would help to insure that the trust assets remained beyond the plaintiffs' control. As the Second Circuit said at 547 F.2d 167: "While it is true that the trustee has an independent duty to safeguard trust property, only the person asserting the liability is likely to be zealous in objecting to a breach of that duty."

Plaintiffs also argue that, if the § 461(f) deduction is made subject to a claimant's signature or assent, the claimant will then take advantage of that requirement and use information revealed in the trust agreement concerning the value the plaintiffs ascribe to the claim to strengthen the claimant's litigating position. This argu-

ment is inapposite. Section 461(f) does not create the right to a deduction. It is, in essence, a timing provision which allows a taxpayer to take a deduction in the year he or she transfers money or property to provide for the satisfaction of an asserted liability rather than in a later year when the contested claim is finally settled. Taxpayers are not entitled to the deduction under § 461(f) unless they satisfy its requirements.[10]

■ Moreover, the regulation, by its terms, does not require that the person asserting liability be aware of, or agree to, the exact amount transferred to provide for the satisfaction of the asserted claim. The regulation does require that the person asserting liability, along with the taxpayers and the trustee, agree in writing to the transfer of money to satisfy the asserted liability, when required on settlement of the claim. It does not necessarily follow that the written agreement the claimant signs (or otherwise indicates assent to in writing) must specify the exact amount(s) transferred. Thus, as long as the person asserting liability is aware of and agrees in writing to the transfer of assets by the taxpayer to provide for the satisfaction of the contested liability between them, the regulatory requirements are met. A requirement under Treas.Reg. § 1.461–(2)(c)(1)(ii) that the claimant must agree in writing to the establishment of the trust is a reasonable interpretation of § 461(f)(2), as such a requirement assists in carrying out the intent of Congress to allow a deduction under § 461(f) only if the taxpayer has transferred money or other property beyond his or her control.[11]

**10.** Clearly, a taxpayer whose litigating position in relation to the person asserting liability would be so jeopardized does not have to transfer funds pursuant to a written agreement indicating the claimant is aware of the transfer. That is, a taxpayer may decide it is not in his or her best interest to qualify for the deduction under § 461(f). Thus, this argument is not relevant to disposition of the issues concerning the regulatory requirements and the validity of the regulation.

**11.** While not in accord with *Poirier & McLane Corp.* on the requirement for the claimant's signature on the agreement, in *Chem Aero, Inc. v. United States,* 694 F.2d 196 (9th Cir.1982), the court allowed the § 461(f) deduction because the manner of transfer was not open to the possibility of tax abuse. The court relied on the facts that the arrangement there at issue was not secret and that the funds involved were the only ones available for satisfaction of the liability. Since the key to allowance of the deduction in *Chem Aero, Inc.* is the absence of the possibility of tax abuse, if that criterion was applied to

*Conclusion*

It is concluded that Treas.Reg. § 1.461–2(c)(1)(ii) requires that the person asserting the liability agree in writing to the transfer of money or other property to provide for the satisfaction of the asserted liability. Such a requirement effectuates the intent of Congress in enacting § 461(f). Thus, it is concluded the Treasury regulation is a reasonable and consistent interpretation of § 461(f) and its validity must be upheld. *Commissioner v. South Texas Lumber*, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948).

Since the trust created by the plaintiffs did not satisfy the regulatory requirements, as interpreted herein, the payments made to the trust, along with the income earned, were not deductible in taxable years 1975, 1976 and 1977.

Therefore, it is ORDERED:

(1) plaintiffs' motion for partial summary judgment is denied, defendant's motion for partial summary judgment is granted;

(2) upon the conclusion of further proceedings, a final judgment shall be entered incorporating this determination; and

(3) on or before December 5, 1986 counsel shall file a "Status Report(s)" with the clerk indicating the procedure(s) proposed to obtain the final resolution of the remaining issues in this litigation.

the facts of the present case, the § 461(f) deduction would not be allowed. *See also Consolidat-* *ed Freightways, Inc. v. C.I.R.,* 708 F.2d 1385 (9th Cir.1983).