LESLIE W. SEBRING AND NANCI M. SEBRING,
PETITIONERS *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 32875-87.          Filed August 8, 1989.

*Jon F. Spadorcia* and *David M. Berry,* for the petitioners.
*Timothy S. Sinnott,* for the respondent.

WILLIAMS, *Judge:* Respondent determined deficiencies in petitioners' 1979 and 1981 Federal income tax of $9,690.23 and $14,020.60, respectively. The taxable year 1979 is in issue as a result of respondent's disallowance of a net operating loss carryback from 1982. The issues for decision are: (1) Whether petitioner Leslie Sebring, a bail bondsman, may deduct pursuant to section 162[1] payments into accounts held as security for his promise to indemnify his sureties and, if not, (2) whether Mr. Sebring earned the funds paid into such accounts.

---

[1] All *section references are to the* Internal Revenue Code of 1954 *as amended and in effect for the years in issue.*

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners, Leslie and Nanci Sebring, resided in Indianapolis, Indiana, at the time they filed their petition in this case. Nanci Sebring is a petitioner solely by reason of having filed joint returns with her husband, Leslie Sebring (petitioner).

Petitioner maintained his books and filed his Federal income tax returns on the cash receipts and disbursements method of accounting. During 1981 and 1982, petitioner executed bail bonds as an agent of three insurance companies: Peerless Insurance Co. (Peerless); Cotton Belt Insurance Co. (Cotton); and Allied Fidelity Insurance Co. (Allied). The terms of petitioner's agency were set out in standard form bail bond agreements (collectively, the agreements).

Bail bonds are performance bonds requiring the appearance of criminal defendants at judicial proceedings: the principal on the bonds is the defendant; the obligee is the State of Indiana, which requires the defendant's appearance; and the surety is the insurance company writing the bond, which guarantees performance. As a bail bondsman, petitioner functions as the agent of an insurance company, executing bonds, collecting premiums, and attempting to assure performance of the bonds on behalf of the surety.

Petitioner collects 10 percent of the face amount of the bond from a defendant as the cost of the bond. Of this amount, pursuant to the agreements, petitioner pays a percentage to the surety as a premium, transfers a percentage to his indemnity fund, and keeps the remainder. The insurance company that issues a bond is principally liable to Indiana for assuring a defendant's court appearance. In the event a defendant fails to appear, the insurance company has to pay to Indiana a late surrender fee or forfeiture.

Pursuant to the agreements, the insurance companies shift ultimate liability for expenses and forfeitures on each bond to petitioner. In the agreements, petitioner agrees to bring a defendant to court as required by the bond or, if he fails, to indemnify the surety for any expenses incurred, including forfeiture.

As security for petitioner's promise to indemnify the sureties, the agreements require petitioner to contribute to

separate indemnity funds for each surety. In the industry, this fund is called the "Build Up Fund" or "BUF account." Each insurance company functions as trustee of the BUF account established pursuant to the agreement with that particular surety. As required by the agreements, petitioner paid a specified percentage of the face amount of each bond issued into the BUF account over which the surety that issued the bond was trustee. The funds in a BUF account were accumulated in proportion to the volume of outstanding bonds executed by petitioner on behalf of the surety which was trustee of that account. Although an insurance company could agree to suspend petitioner's contributions to a BUF account once accumulated funds reached a secure level, none of the sureties exercised this discretion, and petitioner continued to make the required deposits for every bond issued during 1981 and 1982.

Peerless, Cotton, and Allied each determined where to maintain the BUF accounts. Indiana law limited the surety's investment decisions by requiring that BUF accounts be maintained in banks, savings and loan associations, or credit unions in the State. The Peerless agreement differed from the other agreements by allowing petitioner to concur in investment decisions. Peerless maintained petitioner's BUF account in a segregated trust account, while Cotton maintained a BUF account that pooled payments from petitioner and its other bail bondsmen. The record does not reveal how Allied maintained its BUF accounts.

Petitioner's BUF accounts accumulated any accrued interest. While only the Peerless agreement specified that the interest on the account belonged to petitioner, each of the agreements required petitioner to pay the taxes on the interest earned. Petitioner reported as income the interest on his BUF accounts on his 1981 and 1982 Federal income tax returns.

Each surety had the sole right to withdraw funds from petitioner's BUF account over which the surety was trustee. When an insurance company became liable for a bond forfeiture, it could draw from petitioner's BUF account to pay its obligation to the State. The surety could require petitioner to transfer additional cash or other assets to his BUF account to restore funds to an adequate level. Neither

the bondsman nor the State could draw payment from the BUF account.

Under the terms of the agreements, however, the insurance companies could forego indemnity from the BUF account. In this circumstance the BUF account would not be drawn upon, and petitioner would reimburse the surety directly. During 1981 and 1982, the sureties did not draw from petitioner's BUF accounts to satisfy any of petitioner's liabilities under the agreements. Petitioner paid his liabilities in 1981 and 1982 from sources other than the BUF accounts.

Although an insurance company is not typically required to give a bondsman notice of any draw on the BUF account, bondsmen typically receive quarterly or semiannual reports and periodically inquire about the status of their accounts.

Either petitioner or the surety could terminate their agreement, with or without cause, subject to certain notice requirements. Petitioner did not have access to his BUF account until an agreement was terminated. Upon termination, after satisfaction of each outstanding bond and any other liability petitioner may have had to the insurance company, the insurance company was required to return the balance of the BUF account to petitioner or his estate. In the industry, depending on the circumstances of the termination and the length of the term of any outstanding bond, as many as 15 years may pass before all outstanding bonds are discharged. Cotton terminated its agreement when it liquidated in 1982. In 1985, Cotton's receiver returned the balance of petitioner's BUF account to petitioner after determining that all of his potential liabilities to Cotton were favorably resolved or discharged.

In the event a bail bondsman terminates his agency status with an insurance company and acquires agency status with another, the bondsman does not receive the balance of his BUF account; rather, his account is transferred to the successor surety. Petitioner terminated his agreement with Peerless in 1982 and became an agent of Allied. Despite having assigned his interest in his BUF account to Peerless, as a precondition to entering an agreement with Allied, petitioner was required to, and did,

assign his interest in the BUF account with Peerless to Allied.

In 1981 and 1982, petitioner's payments into all his BUF accounts aggregated $27,391 and $22,696.30, respectively. Petitioner offset his income by these amounts as a portion of cost of goods sold. In the notice of deficiency, respondent disallowed the offsets to income.

OPINION

In general, a cash basis taxpayer may deduct business expenses pursuant to section 162(a) in the taxable year in which the expenses are paid. Sec. 1.461-1(a)(1), Income Tax Regs. The parties agree that petitioner's BUF accounts are required as a necessary condition of his doing business as a bail bondsman.[2] They dispute whether funds transferred to those accounts are deductible when paid.

Petitioner argues that, because the payments into the accounts are necessary for him to conduct business, he can deduct those payments in the years in which made. Respondent argues that payments are deposits to secure payment of future liabilities and are not deductible until an insurance company draws from an account to satisfy a specific liability under the agreements. We agree with respondent.

Petitioner argues by doubtful analogies. Citing *Waldheim Realty & Inv. Co. v. Commissioner*, 245 F.2d 823 (8th Cir. 1957), revg. 25 T.C. 1216 (1956), petitioner analogizes payments to his BUF account to prepaid expenses which may be currently deducted under the "one year rule" of *Zaninovich v. Commissioner*, 616 F.2d 429 (9th Cir. 1980), revg. 69 T.C. 605 (1978), despite the utility of the payment extending beyond the year of payment. See sec. 1.461-1(a)(1), Income Tax Regs. The fatal weakness of this argument is that all payments into each BUF account had life far beyond any "one year rule." The funds were available to satisfy claims on bonds as long as the bonds were outstanding, which could mean as long as 15 years. Furthermore, in the years at issue no BUF account was

---

[2]The terms of the agreements differ slightly. The Cotton and Allied agreements are identical forms—only the terms of payment into the indemnity fund vary. The wording of the Peerless agreement differs immaterially from the other agreements.

drawn on; rather, petitioner indemnified the sureties from sources other than the BUF accounts. Consequently, the BUF accounts, which could be used only for purposes of satisfying petitioner's liability to indemnify the sureties, were never the source of any actual expense. *Bonaire Development Co. v. Commissioner,* 679 F.2d 159 (9th Cir. 1982), affg. 76 T.C. 789 (1981). The claims that could have been satisfied from the BUF accounts were satisfied from other resources.

Petitioner also argues that his payments are similar to an employer's deductible payments of deferred compensation to a "defined benefit retirement plan" under section 404(a). It is enough to say that the BUF account was not a defined benefit plan, or intended to be, and that the peculiar rules governing such plans have no applicability here.

Relying on *Consolidated Freightways, Inc. v. Commissioner,* 74 T.C. 768 (1980), revd. on other grounds 708 F.2d 1385 (9th Cir. 1983), respondent argues by reference to rules for deducting contingent liabilities pursuant to section 461(f), and his argument is closer to the mark. In *Consolidated Freightways,* the taxpayer failed to qualify a reserve for contingent liabilities under section 461(f) because payments to the reserve provided the security necessary for Consolidated to qualify as a common carrier and were not intended to satisfy a contested liability. *Consolidated Freightways,* 708 F.2d at 1391. The statute was designed to enable taxpayers to deduct payments to funds set aside to meet contested liabilities; because the payments were not made in respect of contested liabilities, we held them to be not deductible. 74 T.C. at 804. Petitioner does not argue that his payments are deductible under section 461(f), and the taxpayer in *Consolidated Freightways* conceded that its payments were not otherwise deductible. Nevertheless, if payments to reserves for contested liabilities are deductible only as prescribed by special statutory provision, it would seem a fortiori that payments made in respect of liabilities that do not exist are not deductible.

Indeed, the case law has long followed the principle that a contribution to a reserve for future liabilities is not deductible; only actual payment out of the reserve to satisfy a definite liability can give rise to a deductible expense. *E.g.,*

*Commercial Liquidation Co. v. Commissioner,* 16 B.T.A. 559 (1929), *World Airways, Inc. v. Commissioner,* 62 T.C. 786, 801 (1974), affd. 564 F.2d 886 (9th Cir. 1977); *Rosenthal v. United States,* 11 Cl. Ct. 165, 171 n. 8 (1986). Whether the reserve payments are mandatory is not dispositive of the issue of their deductibility. *Jack's Cookie Co. v. United States,* 597 F.2d 395, 398-399 (4th Cir. 1979); see also *El Dorado Oil Works v. Commissioner,* 46 B.T.A. 994, 998 (1942); *American Title Co. v. Commissioner,* 29 B.T.A. 479, 482 (1933), affd. 76 F.2d 332 (3d Cir. 1935). In this respect, petitioner's required payments to BUF accounts are similar to required payments to a mortgage escrow in respect of real estate taxes. *Hradesky v. Commissioner,* 540 F.2d 821 (5th Cir. 1976), affg. 65 T.C. 87 (1975). In *Hradesky* we held that a cash basis taxpayer's required payment of real estate taxes in escrow is not a deductible payment until payment out of escrow is made to satisfy the taxpayer's tax liability. Until payment is made of an actual liability that is due, no deductible expense exists. This rule has been followed for more than 60 years. E.g., *Commercial Liquidation Co. v. Commissioner, supra* (collection agency contractually required to set aside a portion of its receipts in a reserve fund held by a surety to protect against contingent liabilities not allowed a deduction).

Even if, as in this case, the reserve is more than a bookkeeping entry, and payments are actually made to a third party, payments to a reserve are not deductible because they are in the nature of a security deposit held for payment of future liabilities. See *Fiore v. Commissioner,* T.C. Memo. 1979-360, affd. without published opinion 636 F.2d 1208 (3d Cir. 1980). Indeed, petitioner's liability for expenses associated with a bond forefeiture does not arise prior to his obligation to indemnify the surety. The sureties have the right to draw on the BUF accounts, but their control of the funds' disposition is very restricted. The funds can be used only to satisfy petitioner's obligation to indemnify the surety. Moreover, even when a liability arises on a bond, the surety is not required to draw on the BUF account to satisfy the liability. During 1981 or 1982, none of the sureties drew from petitioner's BUF accounts to pay expenses.

Importantly, on termination of an agreement, the insurance company is contractually required to return the balance of petitioner's BUF account to petitioner after satisfaction of any outstanding liability. Although the insurance companies manage the BUF accounts for the duration of their business relationship with him, the benefits of each account inure to petitioner. Petitioner ultimately retains the benefit of the reserve payments plus any investment income earned.

We find that petitioner's payments to his BUF accounts, though mandatory payments to a third party, were deposits held as security for payment of contingent liabilities. No liability under the agreements existed during the years before us which was satisfied by funds in a BUF account. Petitioner may not deduct his payments to the BUF accounts in 1981 or 1982.

Alternatively, petitioner argues that the BUF deposits should not be included in his income because he did not actually or constructively receive the payments. See sec. 1.446-1(c)(i), Income Tax Regs. This argument ignores the facts of petitioner's relationship with the sureties and his indemnity arrangement with them. Petitioner's payments to his BUF accounts were not part of the premium due the sureties for issuing the bonds. The funds were paid from the portion that petitioner collected as his fee. The agreements do not support petitioner's contention that he collected the funds transferred to the BUF accounts on behalf of the insurance companies. Rather, the agreements confirm that petitioner earned those funds and set them aside as security for his promise to indemnify the insurance companies by transferring amounts to the BUF accounts. Amounts required to be deposited in an escrow or reserve account are includable in income if they are earned by the taxpayer and refundable after satisfying the requirements of the escrow or reserve. *United States v. Britt*, 335 F.2d 907, 912 (5th Cir. 1964). The funds in each BUF account belonged to petitioner, and they are includable in his income when collected by him.

*Decision will be entered for the respondent.*