T.C. Memo. 2012-93

UNITED STATES TAX COURT

ERNEST N. ZWEIFEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CREWS ALL NITE BAIL BONDS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 15226-10, 15227-10.          Filed March 28, 2012.

<u>John Sherman Winkler</u>, for petitioner.

<u>Miriam C. Dillard</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  Respondent determined deficiencies in Ernest Zweifel's

(Zweifel) Federal income tax, with additions to tax for failure to timely file under

section 6651(a)(1)[1] and accuracy-related penalties under section 6662(a) for taxable years 2001, 2002, 2003, 2004, 2005, and 2006.[2] Respondent determined deficiencies in Crews All Nite Bail Bonds, Inc.'s (Crews) Federal income tax, with additions to tax for failure to timely file under section 6651(a)(1) and accuracy-related penalties under section 6662(a) for taxable years 2004, 2005, and 2006. After concessions, the issues for decision are: (1) whether Zweifel and Crews (collectively, petitioners) may deduct as section 162 business expenses in the years at issue amounts deposited in Build Up Fund (BUF) accounts; (2) whether petitioners are liable for additions to tax for failure to file; and (3) whether petitioners are liable for accuracy-related penalties.

## Background

These cases have been submitted fully stipulated under Rule 122. The facts and exhibits have been stipulated and are incorporated herein by reference. At the time the petitions were filed, Zweifel's residence and Crews' principal place of business were in Florida.

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Respondent has conceded that Zweifel is not liable for the sec. 6651(a)(1) addition to tax for taxable year 2006.

Zweifel is a licensed professional bail bond agent. Before and during all years at issue Zweifel conducted business under the name All American Bail Bonds (AABB). AABB is a sole proprietorship. Zwiefel untimely filed his 2001 through 2005 individual Federal income tax returns on August 6, 2007. He timely filed his 2006 individual Federal income tax return on August 6, 2007. Zweifel reported receipts and deductions for AABB on Schedule C of his individual income tax returns for the years at issue.

In February 2004 Zweifel began conducting business through the corporate entity, Crews, while continuing to conduct business as AABB. Zweifel has been the president and sole corporate officer of Crews since its incorporation. Crews untimely filed its 2004 corporate Federal income tax return on July 26, 2006, and untimely filed its 2005 and 2006 corporate Federal income tax returns on December 14, 2007. Crews consented to an extension of the period of limitations on assessment to December 31, 2010, for tax years 2004 through 2006. Both Crews and Zweifel are cash method taxpayers.

Under Fla. Admin. Code Ann. r. 69B-221.085 (2004), bail bondsmen are required to file with the Office of Insurance Regulation the bail bond rate they intend

to charge and, once the rate is filed, charge that same rate for every bail bond.[3]

Petitioners charged a rate for their execution of a bail bond equal to the greater of 10% of the face amount of the bond or $100. For example, if a court sets a defendant's bail at $100,000, the cost of the bond would be $10,000. In exchange, petitioners would assume liability under the bond and guarantee the defendant's appearance at court proceedings.

For both AABB and Crews, Zweifel executed bail bonds as an agent of National Surety Services of Florida, Inc. (National Surety). Pursuant to the contract between Zweifel and National Surety, Zweifel was required to pay National Surety 15% of the cost of the bond. For example, the fee paid to National Surety on a $100,000 bond as described above would be $1,500.

If a bonded defendant failed to appear, National Surety would have to pay the face amount of the bond. Zweifel, as agent and pursuant to the contract with National Surety, set aside 1% of the face value of a bond in a BUF account in addition to the 15% fee. BUF accounts are governed by Florida statute and are intended to indemnify the insuring company from any loss through the posting of bail bonds by an agent.

---

[3]The stipulation incorrectly concludes that the Florida law requires the rate of a bail bond be the greater of 10% of the face of the bond or $100. The Florida Office of Financial Services, which regulates Florida bail bond premiums, suggests that the required premium for a State bond is the greater of $100 or 10% of bail set, and that for a Federal bond it is the greater of $100 or 15%.

Fla. Stat. Ann. sec. 648.29(1) (West 2005) requires that BUF funds "be held in an individual build-up trust account for the agent or agency in an FDIC-approved or FSLIC-approved bank or savings and loan association in this state, jointly in the name of the agent or agency and the insurer or in trust for the agent or agency by the insurer." Interest that accrues on the funds accrues to the bail bond agent. Id. sec. 648.29(2). The statute also provides that BUF accounts "are maintained as a trust fund created on behalf of a bail bond agent or agency, held by the insurer in a fiduciary capacity to be used to indemnify the insurer for losses and any other agreed-upon costs related to a bail bond". Id. sec. 648.29(3). These funds are the sole property of the agent or agency and, upon termination of the contract with the insurer and discharge of remaining open bonds, are due and payable to the bail bond agent or agency. Id.

For the years at issue Zweifel deposited the following amounts in the BUF account:

| Year | Deposit |
|------|---------|
| 2001 | $111,893.38 |
| 2002 | 103,773.51 |
| 2003 | 105,336.32 |
| 2004 | 108,420.49 |
| 2005 | 110,977.60 |
| 2006 | 113,786.24 |

On April 2, 2010, respondent issued to Zweifel a notice of deficiency for taxable years 2001 through 2006. On July 6, 2010, Zweifel filed a timely petition with the Court. Also on April 2, 2010, respondent issued to Crews a notice of deficiency for taxable years 2004 through 2006. On July 6, 2010, Crews filed a timely petition with the Court. On January 25, 2011, these cases were consolidated for trial and briefing purposes.

## Discussion

The parties agree that payments into the BUF accounts are a necessary condition of petitioners' doing business. Petitioners argue that they are entitled to deduct as a business expense the amounts deposited in the BUF accounts in the year in which the amounts are deposited. Respondent argues that petitioners are entitled to a business expense deduction only in the year in which the amounts, if ever, are paid out of the BUF account to National Surety.

Generally, a cash basis taxpayer may deduct business expenses pursuant to section 162(a) for the taxable year in which the expenses are paid. Sec. 1.461-1(a)(1), Income Tax Regs. The Court has previously addressed similar buildup fund accounts and held that payments to such accounts are not deductible in the year contributed to the account, as the expense for which the account was created

has not yet arisen.[4]  See Sebring v. Commissioner, 93 T.C. 220, 227 (1989); Firetag v. Commissioner, T.C. Memo. 1999-355, aff'd without published opinion, 232 F.3d 887 (4th Cir. 2000); Rankin v. Commissioner, T.C. Memo. 1996-350, aff'd, 138 F.3d 1286 (9th Cir. 1998).

Petitioners continued to have legal title to the funds, and pursuant to Florida law the amounts in the BUF accounts and any interest earned were for the benefit of the bail bond agent.  Petitioners' payments into the BUF accounts are not expenses at the time deposited, as there is no legal obligation for payment at the time the funds are deposited.  The BUF accounts were established pursuant to a contractual arrangement between petitioners and National Surety to ensure funds were available to petitioners in the future, and the deposits are not payments of contemporaneous expenses in that year.  A bail bond agent's BUF account is akin to a reserve account set up to pay future liabilities that have not yet occurred and his "liability for expenses associated with a bond forfeiture does not arise prior to  * * * [the] obligation to indemnify the surety."  Sebring v. Commissioner, 93 T.C. at 226.

---

[4]BUF accounts for bail bonds may be distinguished from reserve accounts for bad debts created by banks.  Under sec. 585, certain entities are allowed to deduct additions to a reserve for bad debts.  However, sec. 585 is a closed class, and petitioners are not acting in a capacity covered by that section.

Petitioners argue that a BUF account is analogous to the payment of insurance premiums; that is, petitioners are paying a set amount in order to be financially protected in the future. The Court finds this unpersuasive. An insurance premium is defined as "[t]he periodic payment required to keep an insurance policy in effect." Black's Law Dictionary 1300 (9th ed. 2009). Insurance is generally "[a] contract by which one party * * * undertakes to indemnify another party * * * against risk of loss, damage, or liability arising from the occurrence of some specified contingency". Id. at 870. The BUF accounts are intended to provide National Surety reassurance that petitioners have the financial capacity to pay National Surety in case of bond forfeiture. The payments are specific payments tied to an individual bail bond, not a general contractual agreement to indemnify against any number of unforeseen losses.

Petitioners were considered the legal owners of the funds for tax purposes and were required to pay Federal income tax on the interest earned by the funds. As noted by the Court of Appeals for the Ninth Circuit in affirming the Court's holding in Rankin, "[b]y deducting the unspent BUF funds in the year they were deposited into the BUF accounts and then recognizing them as income decades later * * * Rankin effectively transformed his BUF accounts into a tax shelter". Rankin v. Commissioner, 138 F.3d at 1290. Petitioners are not entitled to deduct

the funds deposited in the BUF accounts and are required to include them in gross income for the years at issue.

## Section 6651(a)(1) Addition to Tax

Respondent determined a section 6651(a)(1) addition to tax for failure to timely file. The parties stipulated that Zweifel failed to timely file for taxable years 2001 through 2005 and that Crews failed to timely file for taxable years 2004 through 2006. Respondent has therefore satisfied his burden of production with respect to the addition, and petitioners are liable unless they can show reasonable cause for the late filing. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001). Petitioners do not present any arguments or facts as to the delay in filing. Accordingly, the Court sustains respondent's imposition of an addition to tax under section 6651(a)(1) as to Zweifel for taxable years 2001 through 2005 and as to Crews for taxable years 2004 through 2006.

## Section 6662(a) Accuracy-Related Penalty

Section 6662 provides that a taxpayer may be liable for a 20% accuracy-related penalty on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). For purposes of section 6662(a), negligence includes any failure to make a reasonable attempt to comply with the

provisions of the Code or to exercise ordinary and reasonable care in the preparation of a tax return; disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a tax return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is substantial for an individual if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000 and for a corporation if the amount of the understatement exceeds the lesser of 10% of the tax required on the return or $10 million. Sec. 6662(d)(1)(A) and (B). An understatement is the excess of the amount of tax required to be shown on the return over the amount of tax actually reported on the return reduced by any rebate. Sec. 6662(d)(2).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties. Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent has met the burden of production, as prior caselaw has held that petitioners' position is not consistent with prior Court decisions. However, the accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The Court acknowledges that petitioners present well-thought-out arguments attempting to distinguish their circumstances from those in previous cases. However, the failure to timely file demonstrates that they did not act in good faith or with reasonable cause while advancing their positions. Consequently, Zweifel is liable for accuracy-related penalties under section 6662(a) for taxable years 2001 through 2006, and Crews is liable for accuracy-related penalties under section 6662(a) for taxable years 2004 through 2006.

To reflect concessions and this Court's conclusions stated above,

Decisions will be entered

under Rule 155.